67945. PITTS et al. v. IVESTER et al.

BENHAM, Judge.

*En route from* Athens, Georgia, to Clemson, South Carolina, on February 21, 1981, appellants, Clemson University students, stopped at an Exxon service station in Franklin County, Georgia. Appellant Pitts, the driver of the car, pulled up to a self-service island and exited the car in order to pay for the fuel he intended to purchase. On his way to the station's office, he tossed a cup in the direction of a trash can, but missed the can. The service station attendant told him to pick up the cup, and when appellant Pitts refused to do so, the attendant refused to turn on the gasoline pump. Pitts then placed the cup in the trash and pumped his gasoline without incident. After finishing his task, Pitts removed the cup from the trash, threw it on the ground, and returned to his car. Ivester came out of the station's office, approached Pitts' car, and waved a pistol at the occupants. He pointed the gun at appellants Ziegler and Pitts and told them he could blow them away. After Pitts started the car and sped out of the station, he and Ziegler heard two shots fired. They proceeded onto the interstate highway where they were stopped by a Franklin County deputy sheriff approximately one and one-half miles away. The deputy had stopped the car in response to Ivester's complaint and his belief that Pitts' actions constituted a chargeable offense. The deputy and appellants returned to the station, where Pitts agreed to pick up the discarded cup, and the service station's owner, appellee Cathorn, telephonically agreed to drop the littering charges. Nearly two years later, appellants filed this lawsuit against the service station owner,

the gun-wielding attendant, the Franklin County Sheriff's Department, the sheriff, and Exxon Co., U. S. A., a division of Exxon Corp. ("Exxon"). Appellants alleged negligence on the part of appellees and sought $11.5 million in actual and exemplary damages. When summary judgment was granted Exxon, the sheriff, and the sheriff's department, appellants brought this appeal.

1. In his affidavit, Sheriff Foster described his role in the above-capsulized drama as the owner of the firearm which appellee Ivester allegedly discharged. Foster stated that he had loaned his personal gun to Cathorn, a man he had known for ten years, after Cathorn had told him of the loss of his gun in a burglary of the service station. Foster swore that he "knew of no facts that indicated that [Cathorn or Ivester] had been known to have ever used a gun in a careless or reckless manner. Furthermore, the Franklin County Sheriff's records showed that neither [Cathorn] nor Ivester had been involved in any criminal act involving firearms."

Appellants wish to proceed against the sheriff under the theory of negligent entrustment. Generally, the courts of this State have applied that theory to hold potentially liable the owner of an automobile who entrusted it to another whose use of the vehicle resulted in injury to a third party. See, e.g., *Collins v. Everidge*, 161 Ga. App. 708 (2) (289 SE2d 804) (1982), and cases cited therein. Those cases have held that "[u]nder the theory of negligent entrustment, 'liability is predicated not on the doctrine of respondeat superior but on a negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless, and this negligence must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness. [Cits.]' " *Collins v. Everidge*, supra, p. 710. This is but one application of a broader theory of law, enunciated in Restatement of the Law 2d, Torts § 390, p. 315 (1965): "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." Thus, it is incumbent upon a plaintiff who is faced with a defendant's motion for summary judgment to show that the defendant had " 'actual knowledge of a pattern of reckless [use] or facts from which such knowledge could be reasonably inferred in order to preserve the issue for jury determination.' [Cit.]" *May v. Phillips*, 157 Ga. App. 630 (2) (278 SE2d 172) (1981).

Appellants argue that Foster had the requisite knowledge because he knew the firearm was to be kept at the service station. They

also argue that Foster had a duty, due to the inherent danger of the weapon, to make inquiries of Cathorn before lending him the gun. It is well established that an automobile in the control of an incompetent may become dangerous per se, and in such situations there is little difference between a car and a gun. Holzer, "Liability to the Injured Third Party for Negligent Entrustment of a Firearm." 59 Chi. B. Rec. 346, 352 (1978). Therefore, there is no reason to require further inquiry of a firearm entrustee than of an automobile entrustee. Since the record negates any right of recovery by appellants against the sheriff under the theory of negligent entrustment, the trial court did not err in granting the sheriff's motion for summary judgment.

2. Appellants argue that it was error to grant summary judgment to appellee Exxon based on OCGA § 44-7-14, which absolves a landlord who has "fully parted with possession and the right of possession" of responsibility to third parties who suffer damage due to the negligent or illegal use of the premises by the tenant. Appellants contend that Exxon maintained sufficient control over the service station's activities to establish liability under OCGA § 51-3-1, which requires an owner or occupier of land who, "by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose," to exercise ordinary care in keeping the premises and approaches safe.

Under the terms of the lease agreement between appellee Cathorn and appellee Exxon, Cathorn received possession of the premises in return for a specified monthly rental. All the Exxon products stocked by Cathorn were purchased outright by him from Exxon and only the fixtures located at the station belonged to Exxon. Cathorn was required to make no unlawful use of the premises; to keep the premises in a clean, sanitary and orderly condition; and to operate the business in a safe and orderly manner. Exxon retained the right, but not the obligation, to inspect the premises and equipment from time to time to ensure Cathorn's compliance with the terms and conditions of the lease, and to make necessary repairs. Through the lease, the parties also agreed that: "[i]t is understood that [Cathorn] operates an independent business. Nothing in this lease shall be construed as reserving or granting to Exxon the right to exercise any control over [Cathorn's] business or the manner in which same shall be conducted, but the control shall be and remain in [Cathorn], subject only to [Cathorn's] performance of the obligations of this lease."

These rental terms and conditions describe a relationship between Cathorn and Exxon similar, if not identical, to the relationship between Harris and Amoco Oil Company described in *Ragsdale v. Harris*, 162 Ga. App. 888 (293 SE2d 475) (1982). Like the appellants in *Ragsdale*, appellants herein contend that Exxon's advertising campaigns and Cathorn's use of Exxon signs and logos to identify the sta-

tion as an Exxon station required Exxon to assume the duty to maintain the premises in a safe condition. See OCGA § 51-3-1. As we held in *Ragsdale*, "[t]he lease agreement . . . placed no obligation on [Exxon] to inspect the premises for dangerous conditions, and the undisputed evidence of record refutes any allegation that [Exxon] undertook such a responsibility. With regard to the contention that [Exxon] acquired such a duty as the result of its advertising campaigns and [Cathorn's] use of its signs and logos, we quote from *Manis v. Gulf Oil Corp.*, 124 Ga. App. 638, 639-640 (185 SE2d 589) (1971), as follows: 'It is indeed a matter of common knowledge and practice that distinctive colors and trademark signs are displayed at gasoline stations by independent dealers of petroleum products suppliers. These signs and emblems represent no more than notice to the motorists that a given company's products are being marketed at the station . . . [Cits.]'

"In this case, as in *Manis*, the appellee has negated the existence of any rights, responsibilities, or actions on its part which would tend to show that it controlled the operation of the service station, and the injured appellant[s] [have] made no showing that [they were] induced to come upon the premises of the station because of any representation made to [them] by the appellee." *Ragsdale v. Harris*, supra, p. 889. In light of the precedent established by this court in *Ragsdale*, summary judgment for appellee Exxon was proper.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED JUNE 25, 1984.

*Brian S. Carney*, for appellants.
*John A. Dickerson, Hugh F. Newberry, Andrew J. Hill, Jr., Charles D. Strickland, Earle B. May, Jr.*, for appellees.