**Earl JOHNSON, Plaintiff–Appellant,**

v.

**Fred PATTERSON, Jr., Fred Patterson, Sr. and Ursula Patterson, Defendants–Appellees.**

No. 49A04–9004–CV–161.

Court of Appeals of Indiana, Fourth District.

April 25, 1991.

Reginald B. Bishop, Roberts & Bishop, Indianapolis, for plaintiff-appellant.

John D. Cochran, Jr., Kenneth P. Reese, Young, Cochran & Reese, Robert E. Saint, Coons & Saint, Indianapolis, for defendants-appellees.

MILLER, Judge.

This is a consolidated appeal from two separate judgments[1] entered in favor of appellees, Ursula and Fred Patterson, Sr. (husband and wife), on their respective motions for summary judgment. Ricky Patterson (age 23), Ursula's stepson and Fred Patterson's son, struck plaintiff-appellant Earl Johnson, Ursula's ex-husband, with a shotgun (and damaged his car) during a confrontation between Ursula and Earl. Earl sued Ricky for the battery and included in his complaint counts against Fred and Ursula alleging they negligently entrusted Ricky with the shotgun. Earl claims the trial court erred in awarding summary judgment on the issue of negligent entrustment because there were genuine issues of material fact in dispute. He also claims the trial court abused its discretion by denying him leave to amend the complaint.

We affirm.

## DECISION

The facts presented in the affidavits and deposition testimony reveal the following: Earl and Ursula were involved in a bitter divorce proceeding. Ursula had temporary custody of the parties' child, Robin (then eight years old). Earl had threatened to beat and kill Ursula. Ursula developed a relationship with Fred and they were married when her divorce was final.

While the divorce was pending, Ursula was living in the marital home on Devon Drive in Marion County. On April 6th or 7th, 1983, there was an incident at the residence in which Earl threatened and attacked Ursula and Fred. Earl had to be restrained by the police. Ursula left the Devon Drive residence for her safety upon advice of the police. After that incident, Fred gave Ursula a shotgun for protection against Earl and explained how to use it. Ursula placed the gun beneath the back seat in the trunk area of her Pinto automobile on April 6th or 7th, removing it whenever she had Robin with her.

Because Ursula left the Devon residence after the incident, Earl had possession of the home from that date (April 6th or 7th) until April 11th, 1983, when the divorce court ordered him to leave the home and not return unless he was picking up or delivering Robin. On April 12, 1983, Earl picked up Robin for visitation and was to return Robin to Ursula at the Devon Drive residence by 9:30 p.m. When Ursula returned to the residence, she found the locks had been changed. She went to the Patterson residence and telephoned her attorney, who allegedly advised her to seek assistance and protection when she attempted to pick-up Robin. After Ursula could not locate anyone else to accompany her, she asked Ricky Patterson (Fred's son) to accompany her. Ricky, who had a criminal record, was reluctant to get involved, but agreed to accompany her. Ursula was unaware that Ricky had a record.

Ursula and Earl passed each other near the Devon residence. They both stopped and Ursula got out of her car and tried to remove Robin from Earl's vehicle. Earl grabbed Ursula and they struggled. Ursula thought Earl had a gun and called Ricky

1. This is a direct appeal of the judgment entered in favor of Fred and an interlocutory appeal certified by the trial court of partial summary judgment entered in favor of Ursula.

for assistance.[2] While looking in her car for a tool to use to defend Ursula, Ricky discovered the shotgun which had been placed behind the seat in the trunk area. Ricky approached Earl's vehicle, fired a warning shot in the air, shot the tires on Earl's car, struck the windows with the butt of the gun, and struck Earl's cheek with the butt of the shotgun. Fred was not present during these events.

## Scope of Review

■■■■ When reviewing a grant or denial of summary judgment, this court must apply the same standard applicable in the trial court. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229. The court must consider the contents of the pleadings, affidavits, discovery responses and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Progressive Construction & Engineering Co., Inc. v. Indiana & Michigan Electric Co.* (1989), Ind.App., 533 N.E.2d 1279. Even though conflicting facts and inferences may exist regarding certain elements of a claim, summary judgment is proper where there is no real conflict regarding a fact dispositive of the litigation. *Watson v. Medical Emergency Services, Corp.* (1989), Ind.App., 532 N.E.2d 1191.

■■■■ Initially, the party moving for summary judgment has the burden of establishing the lack of a material factual issue, and the non-moving party may rest upon his pleadings until this burden has been satisfied. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243. If the moving party successfully demonstrates that no genuine issue exists, the non-moving party must set forth specific facts showing there is a genuine issue to stave off summary judgment. *Id.; Fort Wayne Community Schools v. Fort Wayne Education Association, Inc.* (1986), Ind.App., 490 N.E.2d 337; Ind.Trial Rule 56(E).

## Negligent Entrustment

■■■■ At issue is whether Earl has stated a claim for negligent entrustment—the shotgun—under the factual situation presented. Negligent entrustment has usually been applied in motor vehicle cases, but the theory does not hinge on the nature of the chattel or instrumentality, but on the supplying of the chattel for probable negligent use. 57A Am.Jur.2d *Negligence* § 337 (1989), citing *Fredericks v. General Motors Corp.* (1973), 48 Mich.App. 580, 211 N.W.2d 44. As a general rule, when an instrumentality passes from the control of a person, his responsibilities for injuries inflicted by it ceases. 79 Am.Jur.2d *Weapons & Firearms* § 38 (1975). An exception exists where the instrument is entrusted to one who is incompetent or irresponsible or who lacks the capacity to safely use or operate the instrumentality. 57A Am. Jur.2d *Negligence* § 329 (1989).

■■■■ In Indiana, there are no cases regarding the negligent entrustment of a firearm. However, other jurisdictions which have considered similar cases have concluded that the elements of a cause of action for negligent entrustment of an automobile and a firearm are the same. *Reeves v. King* (1988), Ala., 534 So.2d 1107; *Pitts v. Ivester* (1984), 171 Ga.App. 312, 320 S.E.2d 226; *Kennedy v. Baird* (1984), Tex. App., 682 S.W.2d 377. In Indiana, the law requires that the owner of an automobile will be liable for the negligent acts of one to whom he entrusts the vehicle only if the owner knows at the time of the entrustment that the person is incompetent, uninstructed in its use or unfamiliar with the dangers of such use. *Stocker v. Cataldi* (1985), Ind.App., 483 N.E.2d 461, *reh'g denied* (1986), 489 N.E.2d 144. *See also Kahn v. Cundiff* (1989), Ind., 543 N.E.2d 627, affirming and adopting (1989), Ind. App., 533 N.E.2d 164. It is insufficient to impose liability where the defendant did not know but could have or should have known of the entrustee's propensity to act

**2.** Earl contends they struggled over a tape recorder, but concedes that Ursula believed it was

a gun. Appellant's Brief, p. 6.

in a negligent manner. *Ellsworth v. Ludwig* (1967), 140 Ind.App. 437, 223 N.E.2d 764. The elements of negligent entrustment are 1) an entrustment, 2) to an incapacitated person or one who is incapable of using due care, 3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment, 4) proximate cause, and 5) damage. *Dunaway v. King* (1987), Ala., 510 So.2d 543; *Stocker, supra.*

*Summary Judgment in Favor of Fred*

 In his amended complaint, Earl contended there was a negligent entrustment from Fred to Ricky. The trial court found,[3] based upon the affidavits and deposition testimony presented in support of the summary judgment motions, that there was no evidence to establish that Fred entrusted the shotgun to Ricky, that Fred was not aware of the potential use of the shotgun by Ricky, and that there was no evidence or reasonable inference that Fred had any actual or immediate knowledge that Ricky would need to defend Ursula from Earl or that Ricky would use the shotgun to do so. A determination of negligence must be based upon probable facts, not mere guess, conjecture, surmise, possibility or speculation. *Halkias v. Gary National Bank* (1968), 142 Ind.App. 329, 234 N.E.2d 652. Here, the undisputed facts negate the essential element of Earl's claim as a matter of law. There was no entrustment—negligent or otherwise—from Fred to Ricky. It is undisputed that Fred did not entrust, consent or even have knowledge that Ricky would come into possession of the shotgun. There is no evidence

that Fred had any knowledge of a possible confrontation between Ricky and Earl such that it might have been foreseeable that Ricky might use the shotgun Fred had given Ursula.

 Earl argues on this appeal that a negligent entrustment occurred when Fred gave the shotgun to Ursula for protection against Earl and that it was foreseeable that the shotgun would be used against Earl. Although Fred does not deny that he entrusted the shotgun to Ursula for her protection, the necessary elements for the claim are missing because there is no showing Ursula was incapacitated or incapable of using due care. Earl's claim that Fred knew Ursula was emotionally unstable due to the stress from a "protracted insidious divorce" (Appellant's Brief p. 22) is not sufficient to support his claim Ursula was incompetent or incapable of using due care. Earl failed to establish negligent entrustment from Fred to Ursula. Furthermore, Ursula is not the person who used the gun to batter Earl.

 Earl relies upon *Rubin v. Johnson* (1990), Ind.App., 550 N.E.2d 324, as authority that the entrustment of a firearm—which is admittedly a dangerous instrument—requires a *greater* standard of care than the entrustment of a vehicle. Negligent entrustment of a firearm was not the issue in *Rubin*. The issue was whether a pawn broker violated a statute regulating the sale of handguns and was, therefore, negligent *per se.* The *Rubin* court observed that Indiana statutes regulating the transfer and possession of handguns were enacted by the legislature to

---

3. Earl requested special findings of fact pursuant to T.R. 52(A) and the court did enter findings and conclusions of law in awarding summary judgment to Ursula and Fred. Special findings are only appropriate on "issues *tried* upon the facts." T.R. 52(A). When summary judgment is awarded there is no trial. Summary judgment is only proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56. If there is any dispute in the evidence which requires a weighing of evidence or a finding of facts, summary judgment is not proper. However, when a court enters judgment on less than all the claims, issues or parties, the

court must designate the issues or claims upon which it finds no genuine issue as to any material facts. T.R. 56(C). If the judgment is not rendered upon the entire case, the court shall enter an order "specifying the facts that appear without substantial controversy and what material facts are actually and in good faith controverted" and the trial will be conducted based on the specified facts. T.R. 56(D). Here, the trial court's "findings" are not for the purpose of weighing evidence, but state the basis for the court's decision recognizing that there are no material facts in dispute on the issue of negligent entrustment.

protect the public from those who would use such weapons in a dangerous or irresponsible manner. The purpose of gun control laws is for the maximum degree of control over criminal and careless use of certain firearms while still making such weapons available for protection purposes. *Id.* The legislature's enactment of these statutes reflect a strong public policy against entrusting irresponsible and undependable individuals with handguns and to safeguard the general public from incompetent, irresponsible or criminal use of such weapons. *Id.* at 329–330. The particular statute at issue in *Rubin*, Ind.Code 35–47–2–7, provides (pertinent part):

> "It is unlawful for a person to sell, give, or in any manner transfer the ownership or possession of a handgun to one who the person has reasonable cause to believe:
>
> (1) Has been convicted of a felony;
>
> (2) Is a drug abuser;
>
> (3) Is an alcohol abuser; or
>
> (4) Is of unsound mind."

(Subdivision 4 has been amended to read "(4) Is mentally incompetent." P.L. 33–1989, effective July 1, 1989)

■ First, we observe that the statute applies to the transfer of *handguns*, not shotguns or rifles.[4] Even if the statute could be interpreted to apply to the present circumstances, there is no evidence that Fred transferred the possession of the gun to Ricky and therefore—with respect to Ricky—there is no violation of the statute. It is not clear whether Fred transferred the ownership or merely the possession of the gun to Ursula. Nevertheless, there is no showing that Ursula has been convicted of a felony, is a drug[5] or alcohol[6] abuser or is of unsound mind or mentally incompetent.[7] Therefore, we affirm the trial court's summary judgment in favor of Fred.

*Summary Judgment in Favor of Ursula*

■ The trial court found that the evidence as presented in the affidavits and depositions did not establish a bailment or entrustment from Ursula to Ricky or that Ursula had any actual or immediate knowledge of Ricky's propensity to act in a negligent manner.

It is undisputed that Ricky had an extensive criminal record which included convictions for robbery and battery. However, there was no evidence that Ursula had any knowledge of Ricky's criminal history *at the time of the incident in question.* There was no evidence that Ursula gave Ricky the shotgun or that Ricky knew Ursula kept the shotgun in her car. Earl alleged that Ricky knew the gun was in the car, but that was only speculation and not fact. Thus, there was a total absence of facts to support an action for negligent entrustment.

■ Likewise, there is a lack of evidence on all material elements to show that Ursula violated IC 35–47–2–7 because there are no facts indicating that Ursula gave the shotgun to Ricky or that she had any knowledge he had been convicted of a felony, was a drug or alcohol abuser, or was of unsound mind or mentally incompetent. Therefore, we cannot find the trial court erred in granting summary judgment on the issue of Ursula's negligent entrustment to Ricky.

*Denial of Leave to Amend*

Before the court entered summary judgment, Earl filed a Motion for Leave to Amend Complaint on February 26, 1990, after the decision in *Rubin, supra,* was handed down by this court. He alleged a

---

4. A handgun is defined by IC 35–47–1–6 as "any firearm: (1) Designed or adapted so as to be aimed and fired from one [1] hand, regardless of barrel length; or (2) Any firearm with: (A) A barrel less than sixteen [16] inches in length; or (B) An overall length of less than twenty-six [26] inches." IC 35–47–1–11 defines "shotgun"—a weapon intended to be fired from the shoulder.

5. For purposes of interpreting IC 35–47–2–7, drug abuser is defined by IC 35–47–1–4.

6. The definition of "alcohol abuser" applicable to the regulation of firearms is found in IC 35–47–1–2.

7. Unsound mind or mentally incompetent is not defined, but a "proper person" is one who does not have "documented evidence which would give rise to a reasonable belief that he has a propensity for violent or emotionally unstable conduct." IC 35–47–1–7(4)

cause of action for "negligence *per se*" against Fred arising out of the same conduct stated in the original complaint filed on April 2, 1985, and amended on April 3, 1986. The court entered partial summary judgment in favor of Fred[8] and Ursula on March 8, 1990, and denied Earl's motion to amend on March 27, 1990. Earl contends the trial court erred by denying his motion to amend.

A party may amend his pleading once as a matter of right any time before a responsive pleading is served. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." T.R. 15. The grant or denial of leave to amend a complaint is a matter of the sound discretion of the trial court and is reviewable only for an abuse of discretion. *Hoosier Plastics v. Westfield Savings and Loan* (1982), Ind.App., 433 N.E.2d 24. We will reverse the decision of a trial court only for a manifest abuse of discretion. *Beta Alpha Shelter of Delta Tau Delta Fraternity, Inc. v. Strain* (1983), Ind.App., 446 N.E.2d 626. The abuse must be "clear and prejudicial" before reversal is warranted. *Hancock v. York* (1967), 141 Ind.App. 212, 227 N.E.2d 187.

Here, Fred and Ursula answered the original complaint on June 10, 1985. They answered Earl's amended complaint on May 16, 1986. Earl's Motion for Leave to Amend filed on February 26, 1990, alleged a cause of action for "negligence *per se*" or gross negligence based on *Rubin*. In *Rubin*, the legal basis for "negligence *per se*" was a statutory violation, which—as we have discussed above—is not present in the case at bar. Thus, we find no error in the trial court's refusal to grant leave to amend.

CHEZEM and CONOVER, JJ., concur.

---

8. The partial summary judgment was amended by the court entering final judgment in favor of Fred on March 28, 1990.