Carrie L. TEMPLIN, Noalus A. Templin, Jr., and Autumn A. Binnion, by her next friend, Carrie L. Templin, Appellants–Plaintiffs,

v.

Karl R. FOBES, Appellee–Defendant.

No. 52A02–9111–CV–492.

Court of Appeals of Indiana, Second District.

Nov. 2, 1992.

Brent E. Clary, Roger Wm. Bennett, Bennett, Boehning, Poynter & Clary, Lafayette, for appellants-plaintiffs.

James H. Grund, Fern, Grund & Grund, Peru, for appellee-defendant.

SHIELDS, Judge.

Carrie and Noalus Templin and Autumn Binnion (the Templins) appeal the judgment in their favor against Fobes in which the jury was allowed to allocate a percentage of fault to Rockwood, Inc., a nonparty.

We reverse.

## ISSUES

The issues dispositive to our decision are:

1. Whether the trial court abused its discretion by denying the Templins' "Motion for Leave to Amend Complaint" and thus precluding them from adding the nonparty, Rockwood, Inc., as a defendant;

2. Whether the trial court erred in denying the Templins' motion for judgment on the pleadings which sought to test the legal sufficiency of Fobes's nonparty defense on the grounds he had failed to name the nonparty;

3. Whether the Templins were prejudiced by the trial court's actions.

## FACTS

On May 10, 1989, the conversion van driven by Carrie Templin collided with the automobile driven by Karl Fobes at an intersection in Miami County. Templin's daughter, Autumn Binnion, was a passenger in the van. Viewing the evidence most favorable to the verdict, the collision occurred when Fobes, believing that Templin was going to turn right because her right turn signal was blinking, pulled into the intersection in front of Templin, causing her to collide with him. The bolt which anchored the seat to the floor in Templin's van broke on impact, causing the seat to fall sideways. Both Templin and Binnion suffered personal injuries in the accident; Templin's husband, Appellant Noalus (Butch) Templin, suffered loss of consortium as a result of his wife's injuries.

The Templins filed suit against Fobes on August 28, 1989, alleging that the accident was caused by Fobes's negligence. Fobes's Answer, filed October 26, 1989, alleged that the accident was caused, in whole or in part, by Carrie Templin's contributory fault and/or the fault of an "unnamed third party or parties, being nonparties in this action" in negligently designing, manufacturing, and installing the driver's seat in the Templins' van.

On February 1, 1991, the Templins filed a "Motion for Leave to Amend Complaint," seeking to add, as a defendant, Rockwood, Inc., the company which had converted the Templins' van. This motion was denied on May 14, 1991. The proposed complaint alleged claims against Rockwood for negligence and for strict liability. On May 2, 1991, the Templins filed a separate suit against Rockwood, alleging both negligence in the design, manufacture, and installation of the van seat and strict liability. On May 24, 1991, the Templins filed a motion for judgment on the pleadings, seeking to preclude Fobes's nonparty defense because Fobes had failed to name the nonparty defendant(s) within the time period prescribed by the Comparative Fault Act (the Act);[1] that is, not later than 45 days before the expiration of the statute of limitation applicable to the claim against the nonparty.[2] This motion was overruled by the trial court on July 8, 1991. Fobes first identified Rockwood, Inc. by name as the nonparty in a "Motion to Amend Defendant's Contention," which was filed on May 31, 1991 and incorporated into the Pretrial Order entered July 8, 1991.

At trial, Fobes introduced evidence pertaining to the anchor bolt used to bolt the driver's seat in the Templin van to the floor. The Templins argued that Carrie and Autumn's injuries were proximately caused by the impact with Fobes's car and not by the seat.

The jury returned a verdict in which they found damages for Carrie Templin in the amount of $15,000, Noalus Templin in the amount of $1500, and Autumn Binnion in the amount of $1500, allocating fault as follows:

---

1. IC 34–4–33–1 to –13 (1988 & 1992 Supp.).

2. IC 34–4–33–10(c) provides:
A nonparty defense that is known by the defendant when he files his first answer shall be pleaded as a part of the first answer. A defendant who gains actual knowledge of a nonparty defense after the filing of an answer may plead the defense with reasonable promptness. However, if the defendant was served with a complaint and summons more than one hundred fifty [150] days before the expiration of the limitation of action applicable to the claimant's claim against the nonparty, the defendant shall plead any nonparty defense no later than forty-five [45] days before the expiration of that limitation of action. The trial court may alter these time limitations or make other suitable time limitations in any manner that is consistent with:
(1) Giving the defendant a reasonable opportunity to discover the existence of a nonparty defense; and
(2) Giving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action before the expiration of the period of limitation applicable to the claim.

1. Carrie Templin = 5%; Rockwood = 85%; Fobes = 10%;

2. Noalus Templin = 0%; Rockwood = 99%; Fobes = 1%;[3]

3. Autumn Binnion = 0%; Rockwood = 75%; Fobes = 25%.

Judgment was then entered against Fobes in the amount of the percentage of damages for which the jury found him responsible, as required by the Act.[4] The Templins appeal.

## DISCUSSION

### I.

The Templins argue the trial court abused its discretion in denying them leave to amend their complaint to add Rockwood as a defendant. We agree.

A trial court generally has broad discretion to grant or deny a party leave to amend his or her complaint. *Johnson v. Patterson* (1991), Ind.App., 570 N.E.2d 93. We will reverse the trial court's decision only if it constitutes a "clear and prejudicial" abuse of discretion. *Johnson*, 570 N.E.2d at 99. Thus, we must determine whether an abuse of discretion occurred which prejudiced the Templins.

Indiana Trial Rule 15(A) provides that a party should be granted leave to amend his or her complaint "when justice so requires." "The policy in this state is liberally to allow the amendment of pleadings, and leave to amend should be given unless the amendment will result in preju-

dice to the opposing party." *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221, 1223; *see also Peoples Trust & Savings Bank v. Humphrey* (1983), Ind.App., 451 N.E.2d 1104, 1111 ("Prejudice must be shown to justify a denial of leave to amend pleadings."). That policy is unusually strong in a comparative fault case where, as here, the amendment would add a nonparty as a defendant. Section 10(c) of the Act is specifically designed to allow a nonparty to be added as a defendant if the amendment is sought before the claim against the nonparty is foreclosed by the statute of limitations. Our supreme court recognized this policy in *Cornell Harbison Excavating, Inc. v. May* (1989), Ind., 546 N.E.2d 1186. Although the *May* court did not specifically address the relationship between § 10(c) of the Act and its holding that a defendant must specifically name the nonparty to sustain a nonparty defense, it noted that the purpose of the time limitations in § 10(c) is to "give a comparative fault plaintiff an opportunity to add as named defendants any persons subject to allocation of fault under a defendant's nonparty defense." *Id.* at 1187.

In light of this policy, the trial court should have granted the Templins leave to amend their complaint to add Rockwood as a defendant unless Fobes would have been prejudiced by Rockwood's addition in the lawsuit. The prejudice asserted by Fobes was that the case would change from a "relatively simple personal injury case" to a much more complicated and costly products liability action that "might even be a class action suit."[5] Supplemental Record

---

**3.** Both the Templins and Fobes agree that it was error for the trial court to enter judgment when the jury verdict allocated different percentages of fault against Fobes in favor of Carrie and Noalus Templin, as Noalus's damages for lack of consortium are derivative of Carrie's injuries. Because we reverse on other grounds, we do not reach this issue.

**4.** *See* IC 34–4–33–5 and IC 34–4–33–6.

**5.** At the pretrial hearing on the Templins' motion to amend their complaint, Fobes's counsel argued:

We have got a personal injury negligence case, automobile accident here, if they are joined at this point in time we may end up with a change of venue from the court, from the county, we may end up in federal court for all I know. . . . We are also going to be

ending up on the periphery at least of a products liability suit which is greatly going to increase the costs of us defending what started out as a relatively simple personal injury case.

. . .

[Fobes] is going to be injured by having to litigate these issues, at least we are going to have to be involved in the case by having to be involved in what could be a very costly piece of litigaiton (sic) in regard to a products liability. Quite possibly could even turn into something beyond just this one plaintiff. It might even be a class action suit. I don't know, but I do know there was (sic) some problems with that seat and it is our position at this late point in time that we should be allowed to proceed with litigation as it is currently styled in this court with the pleadings as we currently have them. . . .

at 7. This alleged prejudice is insufficient to contradict the clear intent of the legislature that nonparties be made parties whenever feasible, particularly considering the options available to the trial court to simplify trials, including a separate trial on the strict liability claim, *see* Ind.Trial Rule 42(B), or the submission of the issues to the jury in stages, *see* Ind.Trial Rule 42(C). Further, the possibility of a class action claim is pure conjecture on Fobes's part, and it should also be noted that Fobes himself initially changed the simple character of the lawsuit by pleading a nonparty defense against Rockwood.[6] Certainly he may not now argue he was prejudiced by having to prove his defense in a contested arena, instead of shifting blame onto an empty chair. Likewise, any delay that may have resulted from allowing the Templins to join Rockwood at such a late date was caused by Fobes's failure to name the nonparty promptly; Fobes's argument that the Templins should have joined Rockwood earlier ignores the fact that the burden was on him, as the defendant, to plead the identity of the nonparty. *See infra* Part II.

Fobes further argues that it was inappropriate to allow the Templins to join their claim against Rockwood because that claim was based on strict liability and therefore could not be litigated under the Act. The trial court seemed to agree, noting the complexity of the jury instructions that would be required in such a "hybrid" case, that is, a case involving both claims under the Act and claims outside the Act.[7] However, this argument ignores the fact that the Templins also alleged negligence against Rockwood. Thus, the Templins' claim, to the extent that it involved Rockwood's negligence, would have been identical to Fobes's nonparty defense, and the Templins would have recovered the full amount, if any, that the jury allocated to Rockwood under the negligence theory. As previously discussed, if the trial court felt that a "hybrid" case would be too confusing for the jury, it could have ordered a separate trial on the issue of Rockwood's strict liability alone. *See State v. Schuetter* (1987), Ind. App., 503 N.E.2d 418. This procedure would not have prejudiced Fobes, would have allowed the Templins to recover that to which the fact finder determined they were entitled, and would have been fully consistent with the purpose of the Act to allocate liability among all persons who negligently contributed to a plaintiff's injuries.

Because Fobes would not have been prejudiced by the joining of Rockwood as a defendant, it was error for the trial court to deny the Templins leave to amend their complaint to do so. In order to determine whether this error requires reversal, we must determine whether the Templins were

---

Supplemental Record at 6–8.

6. While Fobes's Answer couched the nonparty defense in terms of *negligent* design, manufacture, and installation of the driver's seat in the Templin van, Fobes's counsel consistently spoke of "defects" in the seat, and Final Jury Instruction Number 15, Record at 557, explicitly set out the standard for strict products liability in Indiana. To insure that our opinion is not misinterpreted as sanctioning this practice, we note that IC 34–4–33–5 provides that the court shall instruct the jury to determine the percentage of "fault" of each party and nonparty. "Fault" is defined as "any act or omission that is negligent, willful, wanton, or reckless...." IC 34–4–33–2. The term obviously does not include strict liability. In order to prevail on his nonparty defense, Fobes should have been required to prove that Rockwood's *negligence*, not merely a defect in the seat, was a cause of the Templins' injuries. Although IC 34–4–33–2 does define "nonparty" as "a person who is, or may

be, *liable* to the claimant," it is clear that a person who is liable only under strict liability may not be a nonparty under the Act, and a jury instruction which permits the jury to allocate fault to a nonparty on the basis on strict liability is improper.

7. The court noted:

[I]f you add Rockwell on a products liability [theory] it does complicate matters in terms of trying to explain to the jury that you evaluate the issues between Templin and Fobes in terms of comparative fault, but you evaluate the issues between Templin and Rockwell in terms of products liability which is not comparative fault, so in effect Rockwell must be considered in the formula for comparative fault in that case and then there is a separate verdict and I have not tried one of these hybrids, I just got close to it one time and that was enough to frighten me.

Supp. Record at 9–10.

prejudiced by it. We resolve this issue in our discussion of issue III, *infra*.

## II.

The Templins next argue it was error for the trial court to deny their motion for judgment on the pleadings as to Fobes's nonparty defense, which they filed after the trial court denied them leave to amend their complaint to add Rockwood as a defendant.

A motion for judgment on the pleadings pursuant to Trial Rule 12(C) may be used to challenge the legal sufficiency of a claim or a defense. *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 405. When a T.R. 12(C) motion is so used, it is treated as a motion to dismiss for failure to state a claim or defense under Trial Rule 12(B)(6). *Id.* While T.R. 12(C) and T.R. 12(B)(6) motions are generally used by a defendant to raise the defense that the plaintiff's complaint fails to state a legally redressable claim, they may also be used in place of a motion to strike under T.R. 12(F) to test the legal sufficiency of a defense.[8] *See Smith v. Midwest Mutual Insurance Co.* (1973), Ind.App., 289 N.E.2d 788, 791. Accordingly, to determine whether the trial court erred in denying the Templins' T.R. 12(C) motion, we will apply the same standard used when ruling on a T.R. 12(B)(6) motion; that is, whether, taking all material facts alleged in Fobes's answer as true, the answer sufficiently alleges a valid nonparty defense.

The Templins argue their T.R. 12(C) motion should have been granted and Fobes's nonparty defense foreclosed because Fobes failed to name the nonparty in his Answer within the time period pre-scribed by the Act. In response, Fobes argues that the Act requires him to *assert* his nonparty defense only, not to provide the *name* of the nonparty, especially in light of the fact that the Templins were aware Rockwood was the unnamed nonparty and had sought to join Rockwood as a defendant in the action.[9]

Fobes's argument ignores *Cornell Harbison Excavating, Inc. v. May* (1989), Ind., 546 N.E.2d 1186, 1187, in which our supreme court agreed with the court of appeals' determination that the Act "clearly evidence[s] the legislature's intent to place the burden of pleading and proving the *specific name* of the nonparty on the defendant," (emphasis added), and added that "the plain meaning and clear language of section 6 [of the Act] unmistakably require the disclosure of 'the name of the nonparty,' not merely a generic identification." Thus, Fobes had the burden of both discovering the identity of the nonparty to which he wished to allocate fault and pleading the specific name of that nonparty. The Templins' knowledge that Rockwood was responsible for the conversion of their van and thus a potential nonparty did not relieve Fobes of that burden.

We further agree that the time limit in § 10(c) applies to the naming of a nonparty, not just the assertion of a nonparty defense. While the supreme court in *May, supra*, did not address specifically the question of the application of § 10(c) to the rule that a defendant must specifically name the nonparty to sustain a nonparty defense, it did approve expressly the trial court's order in that case, which granted the plaintiff's motion to strike the defendant's nonparty defense and gave the de-

---

8. We note that our supreme court held in *Cornell Harbison Excavating, Inc. v. May* (1989), Ind., 546 N.E.2d 1186, 1187, that "a motion to strike pursuant to Ind.Trial Rule 12(F) [is] an appropriate mechanism to question a nonparty defense that failed to specifically name the alleged nonparty." However, this does not preclude the use of a T.R. 12(C) motion to accomplish the same thing.

9. Fobes argues that the Templins have waived this issue by failing to object to entry of the Pretrial Order, in which, after an amendment,

Fobes named Rockwood as the nonparty, and by tendering proposed jury instructions which dealt with the nonparty defense. Fobes relies on *Memorial Hospital of South Bend v. Scott* (1973), 261 Ind. 27, 300 N.E.2d 50, for this proposition. However, the *Scott* case involved the submission of an issue to the jury without objection of any sort. Here the issue was properly raised in a pretrial motion which was denied by the trial court. The trial court's denial of the Templins' motion for judgment on the pleadings preserves the issue for appeal.

fendant leave to reinstate the defense if he could specifically identify the nonparty within the time period of the Act. 546 N.E.2d at 1187–88. In addition, the court noted that the purpose of the time limitations in § 10(c) is to "give a comparative fault plaintiff an opportunity to add as named defendants any persons subject to allocation of fault under a defendant's nonparty defense." *Id.* at 1187. Fobes's argument that a defendant need only allege a general nonparty defense within the time period and then name the nonparty specifically at any time before trial both conflicts with this purpose and amounts to shifting the burden of discovering the nonparty's identity in time to name it as a defendant before trial onto the plaintiff, in clear contravention of the legislative intent as discussed in *May. See supra.*

Section 10(c) suggests, but does not mandate, a specific time limit within which a defendant must plead his or her nonparty defense and name the nonparty. Instead, it grants a trial court discretion to establish time limits "consistent with ... [g]iving the defendant a reasonable opportunity to discover the existence of [the defense and] ... [g]iving the claimant a reasonable opportunity to add the nonparty as an additional defendant to the action *before the expiration of the period of limitation applicable to the claim.*" *Id.* (emphasis added). Here, the Templins filed their T.R. 12(C) motion after the statute of limitations on their claim against Rockwood had run. The trial court at that point, therefore, had no discretion to allow Fobes more time to name his nonparty and thus complete the pleading of his nonparty defense.

Because Fobes failed to completely plead his nonparty defense within the time limit prescribed by the act, the trial court erred in denying the Templins' motion for judgment on the pleadings regarding that defense.

### III.

■ We now turn to whether the trial court's errors were prejudicial to the Templins and therefore require reversal. We are faced with a rather unusual circumstance in which the trial court had two bites of the apple—after erroneously denying the Templins' motion to amend their complaint, it could have avoided any prejudice, and thus precluded reversal, by granting their motion for judgment on the pleadings and dismissing Fobes's nonparty defense. Thus, if the trial court had granted either of the two motions, it would not have committed reversible error. However, by denying both motions, the trial court clearly prejudiced the Templins. The Templins were denied the use of the procedures of the Act which allow nonparties to be added as defendants whenever possible in order to avoid the possibility of inconsistent verdicts in separate trials, while Fobes was improperly permitted to use the Act to shift the blame to Rockwood, an empty chair the Templins were not permitted to fill.

We hold, therefore, that the trial court erred both by denying the Templins' motion to amend their complaint and by denying their motion to dismiss Fobes's nonparty defense. Together these errors prejudiced the Templins and require reversal.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

MILLER, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

With respect to Issue II, the majority correctly analyzes *Cornell Harbison Excavating, Inc. v. May* (1989) Ind., 546 N.E.2d 1186. Indiana Code 34-4-33-10 covers the pleading and proof burden placed upon a defendant. *Cornell* reads into I.C. 34-4-33-10 the precise language of I.C. 34-4-33-6, which requires disclosure of the "name of the non-party" in verdict forms. Unlike our case, however, *Cornell* involved a nonparty unknown to either party. In that context, therefore, it was logical to preclude the assertion of a non-party defense unless and until the defendant could vouch for the existence of the non-party. *Cornell*

held that it was not enough to assert that the accident was caused by a dog which ran into the roadway. Here, the non-party was equally known to each party.

Be that as it may, and even if I were to agree that the burden upon a defendant to specifically name the non-party is an absolute prerequisite to the non-party defense, I cannot agree with the rewriting of I.C. 34–4–33–10(c). The majority engages in that amendatory course by requiring the defendant not only to name the non-party whose identity is well known to plaintiff, but to do so within such time as fulfills the purpose of the provision. As here stated by the majority, the purpose is to permit plaintiff " 'an opportunity to add as named defendants any persons subject to allocation of fault under a defendant's non-party defense.' " Opinion at 529. The plaintiff may choose to avail himself of this opportunity or he may choose to not do so. In any event, when the purpose of the provision is clearly met, in that plaintiff has and has always had actual knowledge of the identity of the non-party, plaintiff should not be entitled to an automatic judgment against defendant with respect to the defense.

I fully agree, however, that the trial court erred in refusing to allow Templins to add Rockwood as an additional party defendant. Such addition renders moot the matter of a non-party defense. On this basis I concur and would reverse with instructions to permit Templins to file an amended complaint joining both defendants.[10]

---

**10.** While the majority in footnote 4 states that it does not reach the issue of conceded error in the jury's divergent and inconsistent allocation of fault, I would state the obvious so that upon retrial, the trial court might avert such eventuality. Furthermore, while I fully concur with footnote 7 of the majority opinion as to the relationship between "fault" and "strict liabili-

ty", I would make an observation that such conclusion does not dilute the fact that elements of negligence are very much involved in strict liability defective product cases. *See Jarrell v. Monsanto Company* (1988) 2d Dist., Ind.App., 528 N.E.2d 1158, 1168, *trans. denied* (1990) Ind., 555 N.E.2d 453.