In the Supreme Court of Georgia

Decided: July 6, 2015

S14G1778. ZALDIVAR v. PRICKETT et al.

BLACKWELL, Justice.

Daniel Prickett sued Imelda Zaldivar to recover money damages for injuries that he allegedly sustained in an October 2009 vehicular collision.[1] Prickett and Zaldivar each blames the other for the collision,[2] and Zaldivar also points a finger at Overhead Door Company, which is not a party to the lawsuit. Prickett was employed by Overhead Door, and at the time of the collision, he was driving a truck that Overhead Door had provided to him in connection with his employment. According to Zaldivar, Overhead Door was negligent to have entrusted Prickett with a company truck, and for that reason, it too should bear some of the responsibility for any injuries that he sustained.

---

[1] Prickett's wife also sued Zaldivar for loss of consortium. For the purposes of this opinion, however, there is no need to distinguish between Prickett and his wife, and so, we refer to both simply as "Prickett."

[2] Prickett alleges that, as he was lawfully turning left in an intersection, Zaldivar drove into the intersection against a traffic signal and struck him. Zaldivar says that she entered the intersection lawfully and that Prickett failed to yield the right of way and turned into her path.

Commonly known as the "apportionment statute," OCGA § 51-12-33 requires the trier of fact in some cases to divide responsibility for an injury among all of those who "contributed to" it — parties and nonparties alike — according to their respective shares of the combined "fault" that produced the injury. The statute then requires the trier of fact to apportion any award of damages among the defendants with liability, limiting the liability of each to the extent to which she was assigned responsibility. Zaldivar gave notice under the apportionment statute that she intended to ask the trier of fact in this case to assign some responsibility to Overhead Door for any injuries that Prickett may have sustained in the collision. In response, Prickett filed a motion for partial summary judgment, asserting that OCGA § 51-12-33 does not require any assignment of responsibility to Overhead Door. The statute, Prickett argued, permits attributing "fault" to a nonparty only to the extent that the nonparty committed a tort that was a proximate cause of the injury to the plaintiff. And negligent entrustment of a motor vehicle or other instrumentality never can be a proximate cause of an injury to the person to whom the instrumentality was entrusted, Prickett added, citing Ridgeway v. Whisman, 210 Ga. App. 169 (435 SE2d 624) (1993), a case in which the Court of Appeals suggested just that.

2

Zaldivar noted, on the other hand, that OCGA § 51-12-33 (c) clearly contemplates an assignment of "fault" to nonparties without liability to the plaintiff in tort, and so, she said, the statute cannot be properly understood to limit apportionment involving nonparties to cases in which it can be shown that a nonparty committed a tort that was a proximate cause of the injury in question.

The trial court granted the motion for partial summary judgment, agreeing with Prickett about the meaning of the apportionment statute, and following Ridgeway to conclude that negligent entrustment on the part of Overhead Door could not possibly have been a proximate cause of any injuries that Prickett sustained. Zaldivar appealed, and in a split decision, the Court of Appeals affirmed. See Zaldivar v. Prickett, 328 Ga. App. 359 (762 SE2d 166) (2014). The majority of the Court of Appeals agreed with Prickett about the meaning of the statute, see id. at 361-362, and it adhered to its earlier decision in Ridgeway with respect to proximate cause. See id. at 362. Judge Branch dissented, and like Zaldivar, she urged that assignment of fault to a nonparty does not require that the nonparty itself have liability in tort for the injury to the plaintiff. See id. at 364-365 (Branch, J., dissenting). Moreover, Judge Branch said, if Overhead Door negligently entrusted Prickett with a company truck, its negligent

3

entrustment could be a proximate cause of his injuries, even if Overhead Door might avoid liability to Prickett upon some other ground. Although she did not say so, Judge Branch implied that Ridgeway was wrong about proximate cause. See id. at 366 (Branch, J., dissenting).

We issued a writ of certiorari to review the decision of the Court of Appeals. We now conclude that the majority of the Court of Appeals correctly understood OCGA § 51-12-33 to require the trier of fact to consider the "fault" of a nonparty only when the nonparty is shown to have committed a tort against the plaintiff that was a proximate cause of his injury. We also conclude, however, that negligent entrustment of an instrumentality can be a proximate cause of an injury to the person to whom the instrumentality was entrusted, and the majority of the Court of Appeals erred when it relied on statements in Ridgeway to the contrary. We disapprove Ridgeway to the extent that it suggests that negligent entrustment never can be a proximate cause of an injury to the person entrusted, and we reverse the judgment of the Court of Appeals.

1. We address first what is meant by OCGA § 51-12-33 when it speaks of the "fault" of one who "contributes to" an injury, especially as it concerns nonparties. And to begin, we recall the familiar and settled principles that inform

4

our consideration of statutory meaning. As we recently acknowledged, "[a] statute draws its meaning . . . from its text." Chan v. Ellis, 296 Ga. 838, 839 (1) (770 SE2d 855) (2015) (citation omitted). "When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant," Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted), and so, "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." FDIC v. Loudermilk, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (citation and punctuation omitted). "The common and customary usages of the words are important, but so is their context." Chan, 296 Ga. at 839 (1) (citations omitted). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." May v. State, 295 Ga. 388, 391-392 (761 SE2d 38) (2014) (citations omitted). With these principles in mind, we turn now to the statutory text in question.

We are principally concerned here with OCGA § 51-12-33 (c), which directs the trier of fact in cases to which the apportionment statute applies to

5

"consider the fault of all persons or entities who contributed to the alleged injury or damages." This provision, however, must be read in the context of the other provisions of the apportionment statute. See <u>May</u>, 295 Ga. at 391-392. The statute sets up a comprehensive process for the apportionment of damages according to relative "fault," of which subsection (c) is only a part. See <u>Couch v. Red Roof Inns, Inc.</u>, 291 Ga. 359, 360-361 (1) (729 SE2d 378) (2012). Moreover, other provisions of the statute also use the term "fault," and those provisions especially inform our consideration of what is meant by "fault" in subsection (c). After all, "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." <u>Atlantic Cleaners & Dryers, Inc. v. United States</u>, 286 U. S. 427, 433 (52 SCt 607, 76 LE 1204) (1932) (citation omitted). For these reasons, it is important to consider the apportionment statute as a whole.

In its entirety, the statute provides:

> (a) Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

6

(b) Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

(c) In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit.

(d) (1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

(2) The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

(e) Nothing in this Code section shall eliminate or diminish any defenses or immunities which currently exist, except as expressly stated in this Code section.

(f) (1) Assessments of percentages of fault of nonparties shall be used only in the determination of the percentage of fault of named parties.

(2) Where fault is assessed against nonparties pursuant to this Code section, findings of fault shall not subject any nonparty to liability in any action or be introduced as evidence of liability in any action.

(g) Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

OCGA § 51-12-33.

In the cases to which the statute applies,[3] as we noted earlier, subsection (c) directs the trier of fact to consider the "fault" of all — plaintiffs, defendants, and nonparties alike — who "contributed to" the injury in question. OCGA § 51-12-33 (c). Subsection (a) specifies exactly what is to be done with the "fault" of the plaintiff:

[If] the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact . . . shall determine the percentage

---

[3] In the response to the petition for a writ of certiorari and the brief on the merits filed in this Court, Prickett did not dispute that OCGA § 51-12-33 applies, and so, we accept that it does. To the extent that Prickett may have argued below that the statute simply does not apply in this case, we express no opinion about the merit of that argument, and we leave any such argument to be addressed on remand.

8

of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

OCGA § 51-12-33 (a). Subsection (g) refers back to this assignment of fault to the plaintiff, providing that "the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed." OCGA § 51-12-33 (g). Together, subsections (a) and (g) codify the doctrine of comparative negligence,[4] see Bridges Farms v. Blue, 267 Ga. 505, 505 (480 SE2d 598) (1997), a doctrine that was recognized in Georgia long before the present apportionment statute was enacted in 2005. See, e.g., Lassiter v. Poss, 85 Ga. App. 785, 789 (1) (b) (70 SE2d 411) (1952). The doctrine of comparative negligence always has rested upon the notion that every person "is bound at all times to exercise ordinary care for his own safety." Southland Butane Gas Co. v. Blackwell, 211 Ga. 665, 667 (88 SE2d 6) (1955). Prior to the adoption of the present apportionment statute, when a plaintiff breached that duty, and when his breach was a proximate cause of his injuries, the plaintiff was chargeable with comparative negligence, see Whatley v. Henry,

---

[4] We previously have acknowledged that the apportionment statute codifies the doctrine of comparative negligence. See Couch, 291 Ga. at 364-365 (1).

9

65 Ga. App. 668, 674 (6) (16 SE2d 214) (1941), and his damages were to be "diminished . . . in proportion to the degree of fault attributable to him," Union Camp Corp. v. Helmy, 258 Ga. 263, 267 (367 SE2d 796) (1988), unless his comparative negligence equalled or exceeded that of the defendants, in which event, "the plaintiff could not recover." Bridges Farms, 267 Ga. at 505 (citation and punctuation omitted). Today, these same ends are accomplished by assigning responsibility for an injury to a plaintiff according to his "fault" under subsections (a) and (g) of the apportionment statute. That circumstance tells us that "fault" — at least as the term is used in subsection (a) with respect to a plaintiff — refers to a breach of the legal duty that a plaintiff owes to exercise ordinary care to avoid injury to himself that is a proximate cause of the injury for which he now seeks to recover damages from a defendant.

Subsection (b) of the apportionment statute is addressed to the "fault" of defendants "who are liable" for the injury to the plaintiff, and it specifies that the "fault" of such a defendant — relative to the "fault" of all — is the measure and limit of her liability:

> [T]he trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its

10

award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded . . . .

OCGA § 51-12-33 (b).[5] It is axiomatic that liability in tort requires proof that the defendant owed a legal duty, that she breached that duty, and that her breach was a proximate cause of the injury sustained by the plaintiff. See Tante v. Herring, 264 Ga. 694, 694-695 (1) (453 SE2d 686) (1994) (citing Prosser & Keeton, THE LAW OF TORTS § 30 (5th ed. 1984)). Nothing in OCGA § 51-12-33 suggests that the statute was meant to alter these essential elements of tort liability, that is, to expose defendants to liability to any greater extent than the injuries proximately caused by their breach of legal duty. That tells us that "fault" — at least as it is used in subsection (b) as the measure of liability for a

---

[5] In Couch, we acknowledged that subsection (b) uses "fault" and "liability" in this closely connected way. See 291 Ga. at 362 (1). To the extent that Couch has been understood to suggest that "fault" literally means "liability" for the purposes of the apportionment statute, however, it has been misunderstood. In the first place, "fault" is used with reference to plaintiffs in subsection (a), and saying that a plaintiff has "liability" to himself would be nonsense. By the same token, "fault" is used with respect to nonparties in subsection (c), but a subsequent provision of the statute makes clear that "fault" assigned to a nonparty "shall not subject any nonparty to liability." OCGA § 51-12-33 (f) (2). And even in subsection (b), it would make no sense to say that damages are to be apportioned "among the persons who are liable according to the percentage of [liability] of each person." OCGA § 51-12-33 (b). "Fault" is the measure of liability under subsection (b) for defendants who are liable, but it does not literally mean "liability."

11

defendant — refers to a breach of a legal duty that a defendant owes with respect to a plaintiff that is a proximate cause of the injury for which the plaintiff now seeks to recover damages.

In subsection (c), "fault" is used with reference to the "fault of all persons or entities who contributed to the alleged injury or damages," and so, it includes not only the "fault" of nonparties, but also the sort of "fault" attributable to plaintiffs under subsection (a), as well as the "fault" attributable to defendants with liability under subsection (b). "Fault" in subsection (a) refers, as we have said, to a breach of a legal duty that the plaintiff owes for his own protection that is a proximate cause of his injury, and "fault" in subsection (b) refers similarly to a breach of a legal duty that a defendant owes for the protection of the plaintiff that is a proximate cause of the injury to the plaintiff. As used in subsection (c), then, "fault" that "contributed to the alleged injury or damages" must refer to a breach of a legal duty in the nature of tort that is owed for the protection of the plaintiff, the breach of which is a proximate cause of his injury. Understanding "fault" in this way — as the term is used in subsection (c) with respect to plaintiffs, defendants with liability, and others alike — comports with

the particularized meanings of the "fault" described in subsections (a) and (b) that it is meant to encompass.

Moreover, this understanding of "fault" is consistent with the usual and customary meaning of the term as used in a legal context. See BLACK'S LAW DICTIONARY at 725 (10th ed. 2014) ("fault" means "[t]he intentional or negligent failure to maintain some standard of conduct when that failure results in harm to another person"). It fits comfortably with the definition of "fault" that we identified in Couch: "conduct done wrongly or negligently." 291 Ga. at 361-362 (1) (citation and punctuation omitted). And it comports just as well with the way in which we described the scope of the apportionment statute as a whole in Couch: "OCGA § 51-12-33 addresses the two classes of people, the plaintiff(s) and tortfeasor(s), including nonparties, who are responsible" for the injury at issue. Id. at 360 (1). A "tortfeasor," after all, is simply one who commits a tort. See BLACK'S LAW DICTIONARY at 1718. In context, subsection (c) is most naturally and reasonably understood to require the trier of fact to consider any breach of a legal duty that sounds in tort for the protection of the plaintiff, the breach of which is a proximate cause of the injury about which he complains,

whether that breach is attributable to the plaintiff himself, a defendant with liability, or another.

Before we conclude our consideration of the apportionment statute, however, we must address a provision of the statute that, according to Zaldivar, poses a problem for understanding "fault" in the way in which we have said it is most naturally and reasonably understood. Immediately following its provision that the trier of fact must "consider the fault of all persons or entities who contributed to the alleged injury or damages," subsection (c) adds that this is true "regardless of whether the person or entity was, or *could have been*, named as a party to the suit." OCGA § 51-12-33 (c) (emphasis supplied). If the "fault" of a nonparty can be considered regardless of whether the nonparty "could have been named as a party to the suit," Zaldivar says, then the "fault" of a nonparty can be considered regardless of whether the nonparty has liability to the plaintiff. But if "fault" consists of a breach of a legal duty that sounds in tort and is owed with respect to the plaintiff, the breach of which is a proximate cause of the injury that the plaintiff has sustained, then the person in breach necessarily would be subject to liability to the plaintiff, Zaldivar argues. And so, she concludes, understanding "fault" as we have done would effectively write

14

the "could have been" provision right out of subsection (c). In her dissent, Judge Branch raised the same sort of concern. See Zaldivar, 328 Ga. App. at 364 (Branch, J., dissenting).

Standing alone, the provision in subsection (c) about a nonparty that "could [not] have been named as a party to the suit" does not necessarily refer to a nonparty without liability. One certainly can be named as a defendant in a lawsuit but be without liability, precisely because the case is defended and tried, and in the end, a judge or jury absolves the defendant of liability; that happens in Georgia courtrooms all the time. For that reason, one could understand the statutory reference to those who "could [not] have been named as a party to the suit" to refer instead to those who could not have been properly named because of jurisdictional and procedural rules, such as the rules for personal jurisdiction, venue, or joinder. That said, another provision of the apportionment statute convinces us that Zaldivar and Judge Branch were right to think that the "fault" of nonparties without liability to the plaintiff in tort can be considered. In subsection (d) (1), the statute provides:

> Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a

15

defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault.

OCGA § 51-12-33 (d) (1). Because a settlement agreement ordinarily extinguishes conclusively any potential liability that the settlement was meant to resolve, a nonparty with whom the plaintiff has settled usually would not have any continuing potential liability to the plaintiff in tort, having instead converted its potential liability to a contractual one. Just as Zaldivar and Judge Branch maintain, the apportionment statute contemplates the consideration of the "fault of all persons or entities who contributed to the alleged injury or damages," regardless of their liability or potential liability to the plaintiff in tort.

But how can that be, if "fault" — at least as applied to one other than the plaintiff himself — involves the commission of a tort as against the plaintiff that is a proximate cause of his injury, which amounts, of course, to proof of the essential elements of tort liability? The answer is simple: Proof of these essential elements is a necessary condition for tort liability, but it does not lead inevitably to liability. Not every tortfeasor can be held liable for his torts. A tortfeasor may have an affirmative defense or immunity that admits the commission of a tort that is the proximate cause of the injury in question. Although such a defense or

16

immunity may cut off liability, a tortfeasor is still is a tortfeasor, and nothing about his defense or immunity means that he cannot be said to have committed a tort that was a proximate cause of the injury to the plaintiff. See, e.g., Shekhawat v. Jones, 293 Ga. 468, 470-471 (1) (746 SE2d 89) (2013) (state employee may have statutory immunity under the Georgia Tort Claims Act when the employee "commits a tort while acting within the scope of his employment with the State"). What happened, happened, and affirmative defenses and immunities do not change what happened, only what the consequences will be. As such, the apportionment statute permits consideration, generally speaking, of the "fault" of a tortfeasor, notwithstanding that he may have a meritorious affirmative defense or claim of immunity against any liability to the plaintiff.[6] We note that this understanding of "fault" is consistent with OCGA § 51-12-33 (e), which makes clear that "[n]othing in this Code section

---

[6] This means, of course, that a named defendant who is found to be without liability to the plaintiff as a result of an affirmative defense or immunity may still have "fault" that is to be considered under OCGA § 51-12-33 (c). Subsection (c), then, is properly understood to require the consideration of the "fault" of four classes of persons or entities: plaintiffs (also covered in subsection (a)), defendants with liability (also covered in subsection (b)), defendants without liability, and nonparties.

17

shall eliminate or diminish any defenses or immunities which currently exist, except as expressly stated in this Code section."

Our understanding is confirmed as well by persuasive authority from Georgia and elsewhere. Starting at home, our own Court of Appeals confronted a similar issue in Barnett v. Farmer, 308 Ga. App. 358 (707 SE2d 570) (2011) (physical precedent only), a case involving a motor vehicle collision in which both Willie and Shirley Farmer were injured. Willie was driving their car at the time of the collision, and his wife was a passenger. The Farmers sued the driver of the other vehicle, and the defendant-driver asserted that Willie was at least partly to blame for the collision. As to Shirley's claims, the defendant-driver pointed to OCGA § 51-12-33 and asked the trial court to instruct the jury to assign a portion of the responsibility for her injuries to Willie. Apparently based on the fact that Willie would have no liability to Shirley by virtue of the doctrine of interspousal tort immunity, the trial court refused to give the instruction requested. The Court of Appeals reversed, however, holding that the immunity to which Willie would be entitled as against his own potential liability to Shirley was no reason that his "fault" could not be considered in connection with apportioning responsibility for her injuries. 308 Ga. App. at 362 (2). See also

18

Frank E. Jenkins III & Wallace Miller, GEORGIA AUTOMOBILE INSURANCE LAW § 48:3 (i) (2014-2015 ed.).

Other jurisdictions with apportionment statutes similar to ours have taken similar approaches. In <u>Couch</u>, we looked to judicial understandings of the Colorado apportionment statute, which, we said, refers to "fault" in much the same way as our own statute. 291 Ga. at 362 n.6 (1). Construing the Colorado apportionment statute, courts have concluded that a nonparty can have "fault" that is to be considered, notwithstanding that the nonparty has a valid defense or immunity as against its own liability to the plaintiff. See, e.g., <u>Doering v. Copper Mountain, Inc.</u>, 259 F3d 1202, 1215 (III) (D) (3) (10th Cir. 2001) ("Even a person who is immune from suit, however, may be a nonparty designee so long as the person owes a duty of care to the injured plaintiff." (Citations omitted)); <u>Williams v. White Mt. Constr. Co.</u>, 749 P2d 423, 429 (III) (B) (Col. 1988) (notwithstanding exclusivity of workers' compensation remedy, "[t]ortfeasors sued by injured employees are now able to present evidence of employer [negligence or fault] at trial so as to reduce whatever damages may be assessed against them to a level proportionate to their liability"); <u>Paris v. Dance</u>, 194 P3d 404, 408 (I) (B) (2) (Col. App. 2008) ("It does not undermine the

19

policy of qualified parental liability to forbid the allocation of financial responsibility for the otherwise nonrecoverable negligence of that parent to another defendant." (Citation omitted)). Courts in other jurisdictions have reached the same conclusions under their own apportionment statutes. See, e.g., Millette v. Tarnove, 435 Fed. Appx. 848, 854 (III) (A) (2) (11th Cir. 2011) (under Florida apportionment statute, "[plaintiff's] inability to recover in tort from a nonparty due to the economic loss rule does not preclude apportioning fault to that nonparty"); Sedgwick Ins. v. CDS, Inc., 47 FSupp3d 536, 549 (B) (2) (E.D. Mich. 2014) (fault of nonparty-employer could be considered under Michigan apportionment statute, notwithstanding that employer would have defense as against plaintiff-employee under exclusive remedy provision of workers' compensation statute); Ovando v. County of Los Angeles, 71 Cal. Rptr. 3d 415, 439 (Ct. App. 2008) ("fault" could be allocated to nonparties under California Proposition 51 notwithstanding their governmental immunity); Fitzpatrick v. Allen, 955 P2d 141, 148 (Kan. App. 1998) ("The Kansas appellate courts have repeatedly held that even if some form of immunity shields a nonparty from liability, the jury may under [the Kansas apportionment statute] still consider the immune persons's fault."); DeBenedetto v. CLD Consulting

20

Engineers, 903 A2d 969, 981 (I) (N.H. 2006) (New Hampshire apportionment statute that requires damages to be awarded "in accordance with the proportionate fault of each of the parties" was interpreted to include "all parties contributing to the occurrence giving rise to an action, including those immune from liability or otherwise not before the court"); Pinnacle Bank v. Villa, 100 P3d 1287, 1293 (Wyo. 2004) (under Wyoming apportionment statute, a party or nonparty, "even though immune, can be included in the jury's comparative fault analysis").

In summary, we hold that OCGA § 51-12-33 (c) requires the trier of fact in cases to which the statute applies to "consider the fault of all persons or entities who contributed to the alleged injury or damages," meaning all persons or entities who have breached a legal duty in tort that is owed with respect to the plaintiff, the breach of which is a proximate cause of the injury sustained by the plaintiff. That includes not only the plaintiff himself and defendants with liability to the plaintiff, but also every other tortfeasor whose commission of a

tort as against the plaintiff was a proximate cause of his injury, regardless of

whether such tortfeasor would have actual liability in tort to the plaintiff.[7]

---

[7] The dissent notes that OCGA § 51-12-33 (b) directs the apportionment of an award of damages "among the persons who are liable," and so, the dissent reasons, the statute must be understood to limit the assignment of "fault" to those who "may be liable" to the plaintiff. There are a couple of problems with this reading of the statute. In the first place, the plain terms of subsection (b) speak of persons "who *are* liable," not those who *"may be* liable," and we are not at liberty to simply rewrite statutes. Second, we know from paragraph (f) (2) that a finding of nonparty "fault" does not subject the nonparty to liability, and for that reason, those "who are liable" — the subjects of subsection (b) — necessarily must be limited to named defendants with liability. Subsection (b) simply does not concern nonparties. Reading the apportionment statute as a whole, it seems quite clear that subsection (b) is instead concerned with damages awarded in cases in which there is more than one named defendant with liability, providing that the award must be apportioned among the liable defendants according to their respective fault, and clarifying that "[d]amages apportioned . . . shall be the liability of each person against whom they are awarded [and] shall not be a joint liability among the persons liable." OCGA § 51-12-33 (b). See also McReynolds v. Krebs, 290 Ga. 850, 851-853 (1) (a) (725 SE2d 584) (2012). The assignment of "fault" is the mechanism by which the "liability" of a named defendant is measured, but "fault" does not literally mean "liability." To the extent that the dissent reads our decision in Couch as holding that "fault" literally means "liability," the dissent misreads Couch. See note 5 supra.

The dissent also points to a number of decisions from other jurisdictions, but those decisions are not persuasive with respect to the meaning of the Georgia apportionment statute. Some of these foreign cases are from jurisdictions without *statutory* authority for the assignment of fault to nonparties. See, e.g., McIntyre v. Balentine, 833 SW2d 52 (Tenn. 1992) (adopting comparative negligence in Tennessee by judicial decision, not statute); Plumb v. Fourth Judicial Dist. Ct., 927 P2d 1011, 1019-1021 (Mont. 1996) (statute permitting assignment of fault to nonparties was unconstitutional). The other foreign cases upon which the dissent relies involve contribution schemes, in which a joint tortfeasor not sued by the plaintiff can be made to contribute to any judgment against those tortfeasors who were sued by the plaintiff. See Brodsky v. Grinnell Haulers, Inc., 853 A2d 940, 945-947 (II) (B) (N.J. 2004); Varela v. American Petrofina Co. of Texas, 658 SW2d 561, 562 (Tex. 1983); Hamme v. Dreis & Crump Mfg. Co., 716 F2d 152, 154 (3rd Cir. 1982). Georgia, of course, has abolished contribution from joint tortfeasors, see OCGA § 51-12-33 (b), and the apportionment statute makes clear that an assignment of fault to a nonparty does not subject that nonparty to any liability, whether for contribution or otherwise. See OCGA § 51-12-33

22

2. We now turn to the particular theory of nonparty "fault" at issue in this case. To the extent that Overhead Door committed a tort as against Prickett by negligently entrusting him with a company truck, could that tort have been a proximate cause of his injuries? Ridgeway suggests that the answer is "no." Ridgeway involved a lawsuit against Victoria Ridgeway for the wrongful death of Linda Whisman, who had been killed while driving Ridgeway's car. The plaintiffs (Whisman's parents) alleged that Ridgeway had negligently entrusted Whisman with the car, and her negligent entrustment, they said, was a proximate cause of Whisman's death. The trial court denied summary judgment to Ridgeway, but the Court of Appeals reversed. In its opinion, the Court of Appeals appeared to conflate Whisman's own comparative negligence with proximate cause, finding as a matter of law that Whisman herself was negligent with respect to the events that led to her death. Apparently for that reason, the Court of Appeals held that any negligence on the part of Ridgeway could not have been a proximate cause of Whisman's death. Ridgeway, 210 Ga. App. at 170-171. That, at least, is how the majority of the Court of Appeals in this case

---

(f) (2).

23

understood Ridgeway, see Zaldivar, 328 Ga. App. at 362 (citing Ridgeway), and although Ridgeway is not perfectly clear about the connection between comparative negligence and proximate cause, that is, we think, a fair reading of Ridgeway.

So understood, Ridgeway is simply wrong. Comparative negligence of the plaintiff, on the one hand, and the causal relationship between the wrongdoing of the defendant and the injury sustained by the plaintiff, on the other, are distinct questions. Comparative negligence is a defense that diminishes or bars the liability of the defendant notwithstanding that her conduct was a proximate cause of the injury to the plaintiff; the defense does not necessarily eliminate the causal connection. That certainly is the case when the defendant is shown to have negligently entrusted the plaintiff with an instrumentality by which the plaintiff was injured.

For an intervening act "to become the sole proximate cause of a plaintiff's injuries, the intervening act must not have been foreseeable by [the] defendant, must not have been triggered by [the] defendant's act, and must have been sufficient by itself to cause the injury." Ontario Sewing Machine Co. v. Smith, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) (citations and punctuation

24

omitted). "[I]f the character of the intervening act . . . was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken." Id. It is settled that liability for negligent entrustment is — by its very nature — based on "a negligent act of the owner in lending [an instrumentality] to another to [use], with actual knowledge that the [other] is incompetent or habitually reckless, and this negligence must concur, as a part of the proximate cause, with the negligent conduct of the [other] on account of his incompetency and recklessness." CGL Facility Mgmt. v. Wiley, 328 Ga. App. 727, 731 (2) (b) (760 SE2d 251) (2014) (citation omitted). See also Butler v. Warren, 261 Ga. App. 375, 376 (1) (582 SE2d 530) (2003); Smith v. Tommy Roberts Trucking Co., 209 Ga. App. 826, 830 (3) (435 SE2d 54) (1993). Proof of the essential elements of negligent entrustment — including actual knowledge of the incompetence or recklessness of the person to whom the instrumentality in question is entrusted — necessarily proves that the negligence of the person entrusted was foreseeable to the one who entrusted that person. And that, in turn, means that the negligence of the person entrusted could not be an intervening act that would

25

break the causal connection between the negligent entrustment and the injury sustained.

It is true that in a first-party negligent entrustment case — a case in which the plaintiff is the one who was negligently entrusted with the instrumentality in question — liability often will be cut off by the doctrine of comparative negligence. See OCGA § 51-12-33 (g) ("the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed"). See also Dobbs et al., THE LAW OF TORTS § 422 (2d ed.) ("In a so-called first-party negligent-entrustment case, where the negligent entrustee herself is the plaintiff, principles of contributory or comparative negligence generally apply."); 57A AmJur2d Negligence § 313 ("[G]enerally an entrustee may bring an action to recover for physical harm to himself or herself resulting from a negligent entrustment . . . . However, such an action may be subject to the defenses of comparative negligence or contributory negligence." (Citations omitted)). And sometimes, the plaintiff's negligence may be so plain and indisputable that it can be found to cut off liability as a matter of law. See Lundy v. Stuhr, 185 Ga. App. 72, 75 (363 SE2d 343) (1987). But comparative negligence is an affirmative defense that does not eliminate

26

altogether the "fault" of the tortfeasor, and first-party negligent entrustment

actions do not *always* fail as a matter of law.

Indeed, as then-Judge Benham explained for the Court of Appeals in Pitts

v. Ivester, 171 Ga. App. 312, 313 (1) (320 SE2d 226) (1984), our law of

negligent entrustment is consistent with the rule recognized in the Restatement

(Second) of Torts § 390:

> One who supplies directly or through a third person a chattel for the
> use of another whom the supplier knows or has reason to know to
> be likely because of his youth, inexperience, or otherwise, to use it
> in a manner involving unreasonable risk of physical harm to *himself*
> and others whom the supplier should expect to share in or be
> endangered by its use, is subject to liability for physical harm
> resulting to *them.*

(Emphasis supplied). A comment to this section of the Restatement identifies

some circumstances in which a viable first-party negligent entrustment action

may lie:

> One who accepts and uses a chattel knowing that he is incompetent
> to use it safely or who associates himself in the use of a chattel by
> one whom he knows to be so incompetent, or one who is himself
> careless in the use of the chattel after receiving it, is usually in such
> contributory fault as to bar recovery. If, however, the person to
> whom the chattel is supplied is one of a class which is legally
> recognized as so incompetent as to prevent them from being
> responsible for their actions, the supplier may be liable for harm
> suffered by him, as when a loaded gun is entrusted to a child of

27

> tender years. So too, if the supplier knows that the condition of the person to whom the chattel is supplied is such as to make him incapable of exercising the care which it is reasonable to expect of a normal sober adult, the supplier may be liable for harm sustained by the incompetent although such person deals with it in a way which may render him liable to third persons who are also injured.

Restatement (Second) of Torts § 390, comment c.[8] See also <u>Martell v. Driscoll</u>, 302 P3d 375, 381 (Kan. 2013). As Restatement (Second) of Torts § 390 and its commentary indicate, the law does recognize first-party negligent entrustment as a tort, even if liability usually will be barred by the doctrine of comparative negligence. To the extent that <u>Ridgeway</u> or any other case that relied on <u>Ridgeway</u> — for instance, <u>Hood v. Harmon</u>, 315 Ga. App. 278, 279 (727 SE2d 143) (2012) — suggests otherwise, they are disapproved.

In this case, the majority of the Court of Appeals relied on <u>Ridgeway</u> and concluded that, as a matter of law, any "fault" on the part of Overhead Door could not have "contributed to" the injuries allegedly sustained by Prickett because his own negligence necessarily would cut off the causal connection

---

[8] Comment c also says that the phrase "subject to liability" denotes that a supplier of chattel "is liable if, but only if, his conduct is the legal cause of the bodily harm complained of and if the person suffering the harm is not subject to any defense such as contributory negligence, which will prevent him from recovering damages therefor." This portion of the comment correctly recognizes the distinction between proximate causation and the affirmative defense of comparative negligence.

between his injuries and any negligent entrustment by Overhead Door. As we have explained, that conclusion rests on an improper conflation of proximate cause and the affirmative defense of comparative negligence. If Prickett had sued Overhead Door for negligent entrustment, he might well have lost as a result of comparative negligence that equals or exceeds that of Overhead Door, or as a result of some other affirmative defense (such as the exclusive remedy provisions of the Workers' Compensation Act). But an affirmative defense or immunity does not eliminate "fault" or cut off proximate cause, it only bars liability notwithstanding that the "fault" of the tortfeasor was a proximate cause of the injury in question. To the extent that Zaldivar can prove that Overhead Door breached a legal duty in tort that it owed Prickett, the breach of which is a proximate cause of the injury that Prickett sustained, the trier of fact in this case may be permitted under OCGA § 51-12-33 (c) to assign "fault" to Overhead Door. Because the Court of Appeals concluded otherwise, its judgment must be reversed.

Judgment reversed. All the Justices concur, except Benham, J., who dissents.

29

S14G1778. ZALDIVAR v. PRICKETT et al.


BENHAM, J., dissenting.

I write because I respectfully disagree with the majority opinion.

In a typical negligent entrustment case involving an automobile accident, the tortfeasor-defendant is the employee and the plaintiff is seeking damages from the employer and/or the employee. See Butler v. Warren, 261 Ga. App. 375 (582 SE2d 530) (2003).  The employer is liable for the plaintiff's damages if its actions concur with the actions of the employee and, together, are the proximate cause of the plaintiff's injuries.  Id. at 376.  The case at bar is not the typical case because the employee is not the tortfeasor-defendant, but rather is the plaintiff; and defendant is attempting to limit her exposure for damages by asserting that the plaintiff's employer is also at fault for the plaintiff's injuries because of its alleged negligent entrustment of the vehicle to him.  The majority has concluded that Georgia's apportionment statute allows the jury to consider the alleged fault of a nonparty employer, who has no liability in tort to the plaintiff, in order to limit a defendant's damages.  I cannot agree with this outcome.

1

Prickett's employer will never be liable in tort for any injuries sustained by Prickett because of the workers'compensation statute which bars such actions. See OCGA § 34-9-11. Georgia's apportionment statute does not allow a defendant tortfeasor to apportion its damages vis-a-vis the plaintiff's immune employer. Specifically, OCGA § 51-12-33 (b) allows for the apportionment of damages "among the *persons who are liable* according to the percentage of fault of each person." (Emphasis supplied.) OCGA § 51-12-33 (c) goes on to provide that:

> In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit.

In order to reach its conclusion that the fault of Prickett's employer may be considered by the jury, the majority opinion reads subsection (c) to the exclusion of subsection (b), ignoring the language that apportionment of damages is to be among "persons who are liable" according to their percentage of fault. This goes against one of the most basic rules of statutory construction that statutes, including subsections therein, are to be read *in pari materia* to each other. See Chase v. State, 285 Ga. 693, 699 (681 SE2d 116) (2009) (Carley, J., dissenting);

2

City of Lagrange v. Georgia Public Service Commission, 296 Ga. App. 615 (2) (675 SE2d 525) (2009). The apportionment of damages to an employer without liability is simply not allowed under a plain reading of the statute.

Indeed, in Couch v. Red Roof Inns, Inc., 291 Ga. 359, 365 (729 SE2d 378) (2012), the majority of the Court stated that the "[t]he purpose of the apportionment statute is to have the jury consider all of the tortfeasors *who may be liable* to the plaintiff together, so their respective responsibilities for the harm can be determined." (Emphasis supplied.) The Court also explained that the statutory scheme works by "tak[ing] the total amount of damages to be awarded to the plaintiff, identify[ing] the persons *who are liable*, and apportion[ing] the damages to each *liable person* according to each person's percentage of fault." (Emphasis supplied.) Id. at 361. Therefore, because the Overhead Door Company is not liable and can never be liable in tort for Prickett's injuries, the jury cannot consider the comparative fault of the Overhead Door Company for the purpose of limiting Zaldivar's damages. See Troup v. Fischer Steel Corporation, 236 SW3d 143, 146-149 (Tenn. 2007) (comparative fault of employer could not be considered in employee's tort action against third-party defendant where workers' compensation law precluded employer's liability in

3

tort); <u>Brodsky v. Grinnell Haulers, Inc.</u>, 181 N.J. 102, 115 (853 A2d 940) (2004) (jury could not assign fault to employer in employee's suit against third-party tortfeasor no matter the comparative negligence as between the employer and third-party); <u>Reynolds v. United States</u>, 280 Mont. 191 (929 P2d 844) (1996) (immune employer could not be apportioned liability or negligence as nonparty); <u>Ridings v. Ralph M. Parsons Company</u>, 914 SW2d 79, 81-82 (Tenn. 1996) (fault cannot be attributed to the plaintiff's employer as attribution of fault is limited to those who can be held liable for the plaintiff's damages); <u>Varela v. American Petrofina Co. of Texas, Inc.</u>, 658 SW2d 561 (Tex. 1983) (negligence of employer could not be considered for the purpose of reducing the damages in employee's action against third-party tortfeasor); <u>Hamme v. Dreis & Crump Manufacturing Company</u>, 716 F2d 152 (3rd Cir. 1982) (Pennsylvania law does not allow the consideration of an employer's negligence for the purpose of allocating fault under the comparative negligence statute).

Accordingly, for the reasons outlined in this dissent, I would affirm the judgments of the trial court and the Court of Appeals.

4