**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**January 26, 2015**

# In the Court of Appeals of Georgia

A14A2286. WOLFE v. GEORGIA DEPARTMENT OF DRIVER
      SERVICES.

MCMILLIAN, Judge.

Gregory A. Wolfe appeals an order of the Superior Court of Cobb County affirming the decision of the Georgia Department of Driver Services (the "Department") to cancel his Georgia driver's license. On appeal, Wolfe contends that the Department is without authority to revoke his license based on the suspension of his privilege to drive in the State of Illinois where it is undisputed that the State of Illinois never issued him a driver's license. We disagree and affirm.

"On appeal, we review the lower court's interpretation of a statute de novo, as statutory interpretation is a question of law." (Citation and punctuation omitted.) *Nisbet v. Davis*, 327 Ga. App. 559, 567 (1) (c) (760 SE2d 179) (2014). The relevant

facts are not in dispute. In 1987 and again in 1989, Wolfe was convicted of a DUI-related offense in Illinois. Wolfe has never been a resident of Illinois and has never been issued a driver's license by Illinois.

In 1999, Wolfe moved to the State of Georgia and obtained a driver's license in this state. In 2001, he was convicted of a DUI in Georgia. Several years later, Illinois received notice of this conviction and imposed a lifetime ban on Wolfe's privilege to drive in that state based on an Illinois statute enacted in 1999.[1] Following the Illinois ban, the Department cancelled Wolfe's Georgia driver's license pursuant to OCGA § 40-5-50, claiming that the withdrawal of Wolfe's driving privileges in Illinois renders him ineligible for the issuance of a driver's license in Georgia.

Wolfe appealed the cancellation of his driver's license with the Department, which thereafter issued its final agency decision on January 16, 2013, affirming the

---

[1] Illinois driver licensing law provides that its Secretary of State "is authorized to suspend or revoke . . . the privilege of a non-resident to drive a motor vehicle in [Illinois] upon receiving notice of the conviction of such person in another State of an offense therein which, if committed in [Illinois] would be grounds for the suspension or revocation of the license of the driver." 625 ILCS 5/6-203 (2014). In addition, "[t]he privilege of driving a motor vehicle on highways of [Illinois] given to a nonresident hereunder and the privilege which an unlicensed person might have to obtain a license under this Act shall be subject to suspension or revocation by the Secretary of State in like manner and for like cause as a drivers license issued hereunder may be suspended or revoked." 625 ILCS 5/6-202 (a) (2014).

cancellation of his license. Wolfe then appealed the final agency decision to the Superior Court of Cobb County. On April 8, 2014, the trial court affirmed the final agency decision, reasoning that the cancellation of Wolfe's license was authorized by OCGA § 40-5-22 (c) (7) because the term "license issued by any other jurisdiction" includes the privilege to drive whether or not such person held a valid, physical license from that jurisdiction. Wolfe timely filed an application for discretionary appeal with this Court, which we granted.

In his sole enumeration of error, Wolfe argues that the trial court erred in concluding that the Department has the authority to revoke a Georgia driver's license based on suspension of the privilege to drive in another state when the other state never issued a physical driver's license to that person. Our analysis must start with construing the statutes setting out the Department's authority to cancel a driver's license. And in so doing, we apply the fundamental rule of statutory construction – that we should construe statutes according to their terms, giving words their plain and ordinary meaning. See *Lakeview Behavioral Health System, LLC v. UHS Peachford, LP*, 321 Ga. App. 820, 824 (743 SE2d 492) (2013).

OCGA § 40-5-50 authorizes the Department to cancel any driver's license previously issued by the Department upon determining that the holder of the license

3

was not entitled to its issuance. And, pursuant to OCGA § 40-5-52 (a), the Department "shall suspend . . . the license of any resident of this state and may suspend a nonresident's operating privilege, upon receiving notice of a conviction in another state of an offense described in [OCGA §] 40-5-54 or [OCGA §] 40-6-391[2] or any drug related offense."[3] In addition, OCGA § 40-5-22 (c) (7) provides that the Department "shall not issue any driver's license to nor renew the driver's license of any person . . . [w]hose license issued by any other jurisdiction is suspended or revoked by such other jurisdiction during the period such license is suspended or revoked by such other jurisdiction."

Our Supreme Court has upheld the constitutionality of this statutory scheme, emphasizing that "there is a strong governmental interest in protecting the public from drivers whose licenses have been revoked for DUI offenses." (Citation and punctuation omitted.) *Roberts v. Burgess*, 279 Ga. 486, 487 (1) (614 SE2d 25) (2005).

---

[2] OCGA § 40-6-391 proscribes driving while impaired by alcohol, drugs, or toxic vapors.

[3] When the Department suspends the license of a Georgia resident for conduct that occurred in another state, "it shall review the suspension at least once every five years and shall reinstate the license if the department determines that the suspension is no longer warranted and the person would otherwise be eligible for a license." OCGA § 40-5-52 (d). It is undisputed that Wolfe is otherwise eligible for a Georgia driver's license.

4

The Supreme Court also explained that "there is a strong governmental interest in preventing 'license shopping' by nonresidents with revoked out-of-state licenses trying to obtain Georgia licenses before their revocation period has ended." (Citation and punctuation omitted.) Id. at 487-488. Nor is Georgia's statutory scheme unique. At the time *Roberts* was decided, the Supreme Court recognized that a similar statutory scheme had been adopted in more than 40 states "in an effort to give effect to the sanctions imposed by each state as it sees fit." Id. at 488.

Nonetheless, Wolfe argues that because Illinois never "issued" him a "license," the Department has no authority to revoke his Georgia license because OCGA § 40-5-22 (c) (7) only applies to a license "issued" and subsequently revoked by another state. However, it is incumbent upon this Court to

> endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless. Furthermore, a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter . . . are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.

(Citation omitted.) *Aimwell v. McLendon Enterprises, Inc.*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012).

5

The plain language of the relevant statutes resolves this question. Under Title 40 of the Georgia Code, a license is defined as "any driver's license or any other license or permit to operate a motor vehicle *issued under, or granted by*, the laws of this state, including . . . *[t]he privilege* of any person to drive a motor vehicle *whether or not such person holds a valid license*." (Emphasis supplied.) OCGA § 40-1-1 (24) (B). Applying this definition to OCGA § 40-5-22 (c) (7), it is clear that it applies not only to the revocation of a physical driver's license issued by another state, but also to any privilege to drive in that state, whether or not a valid license was ever held by the driver. Therefore, we find that the statutory framework established by our legislature is not ambiguous, and where Illinois has revoked Wolfe's privilege to drive in Illinois, a privilege it had previously issued or granted to him, the Department is authorized under the Act to cancel Wolfe's Georgia driver's license. See OCGA §§ 40-5-50; 40-5-22 (c) (7).

Wolfe contends that under *Roberts*, OCGA § 40-5-22 (c) (7) can only be constitutionally applied to those who subjected themselves to the licensing laws and regulations of the other state by applying for a driver's license. We reject that premise. Whenever a driver avails himself of the roadways of a particular state, he is obligated to abide by the applicable rules and regulations of that state. See *Kane v.*

6

*New Jersey*, 242 U.S. 160, 167 (37 SCt 30, 61 LEd 222) (1916) ("The power of a State to regulate the use of motor vehicles on its highways . . . extends to nonresidents as well as to residents. It includes the right to exact reasonable compensation for special facilities afforded as well as reasonable provisions to ensure safety."). Although Wolfe never formally applied for a physical Illinois driver's license, he voluntarily took advantage of Illinois's grant of the privilege to drive within its borders and, on at least two occasions, violated Illinois's laws and regulations regarding the operation of a motor vehicle. Thus, Wolfe subjected himself to the laws and regulations of Illinois. See *Roberts*, 279 Ga. at 488 (1) ("Florida validly suspended appellant's license according to its statutes and regulations. Neither Georgia nor Florida is precluded from taking into account offenses that occurred in another state in deciding whether to issue or revoke an already issued operator's license.") (citation and punctuation omitted). Accordingly, the trial court did not err in affirming the Department's revocation of Wolfe's Georgia driver's license.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*