**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 29, 2016**

# In the Court of Appeals of Georgia

A15A2013, A15A2014.  SHIV  ABAN,  INC.  v.  GEORGIA
     DEPARTMENT OF TRANSPORTATION, and vice versa.

BRANCH, Judge.

Shiv Aban, Inc., appeals a condemnation award in its favor on the ground that the award failed to include prejudgment interest on part of the award. The Department of Transportation (the "DOT") cross appeals an award of attorney fees and litigation expenses in favor of Shiv Aban. For the reasons that follow, we find that the trial court erred by not awarding prejudgment interest, that the award of attorney fees was proper, but that the award of litigation expenses must be vacated and remanded.

The parties agree to the essential facts. On September 12, 2013, the DOT petitioned to condemn property of Shiv Aban and deposited $430,000 into the registry of the Superior Court of Catoosa County as its estimate of just and adequate

compensation for the taking of the subject property. The DOT attached to its complaint an affidavit of John Simshauser dated December 4, 2012, in support of the estimate. In the affidavit, Simshauser states that he is giving his appraisal in connection with the condemnation proceedings for the subject parcel and that "the estimated just and adequate compensation" for the parcel is $430,000. Shiv Aban timely filed a notice of appeal for a jury trial in the superior court and petitioned for an interlocutory hearing before a board of assessors on the sufficiency of the amount of compensation paid into court. Following a two-day hearing, the board of assessors determined that Shiv Aban was entitled to total compensation of $1,700,000 as just and adequate compensation for all property and rights taken by the DOT, and the award was approved by an order of the trial court dated August 5, 2014. On August 12, 2014, the DOT therefore deposited into the registry of the court the balance due of $1.27 million. Shiv Aban dismissed its notice of appeal for a jury trial and stated its desire to accept the award of the assessors. The DOT likewise did not further appeal the assessor's award.

The DOT then moved that the assessors' award be made the final judgment of the court. Shiv Aban filed a cross-motion contending that it was entitled to prejudgment interest on the $1.27 million payment from the date of the taking

through August 12, 2014, the date that sum was deposited into the registry of the court. Following a hearing, the trial court entered an order and judgment granting DOT's motion for a final judgment and denying Shiv Aban's cross motion for prejudgment interest. In Case No. A15A2013, Shiv Aban appeals this ruling.

Shiv Aban also filed a motion for attorney fees and expenses of litigation in the superior court, arguing that under OCGA § 9-15-14, it was entitled to fees and expenses on the ground that the DOT's only evidence offered at the assessors' hearing — an appraisal prepared by Lamar Pinson showing a value of $1.25 million as of the date of the taking — established that the subject property was worth at least that amount, not $430,000, and that the DOT's original estimate of value was not supported by any evidence. In support, Shiv Aban produced evidence showing that Simshauser's affidavit of value was based on a determination of value as of May 20, 2012, approximately 16 months before the date of the taking, and that the valuation was based on pictures of a tornado-damaged motel rather than the motel as subsequently repaired at a cost of over $857,000 months prior to the condemnation. Shiv Aban had engaged its attorneys on a contingent fee and expenses basis, and it asked for its attorney fees and expenses relevant to the difference between what the DOT initially offered and the amount the DOT's own evidence showed as the value

3

of the subject property at the time of the taking, i.e., $1.25 million. Following a hearing, the superior court found that "no credible explanation has been presented to account for the discrepancy of $820,000.00 between the [DOT's] deposit on the date of taking . . . and that of [the DOT's] only testifying witness, Lamar Pinson." The court further found that Shiv Aban's claim for attorney fees was not rooted in a mere difference of opinion among experts but rather that, under the circumstances, "it could not reasonably be believed that a Court would accept the [DOT's initial claim of value.]" Accordingly, the court granted Shiv Aban's request for attorney fees of $236,879 and expenses in the amount of $24,016.19. In Case No. A15A2014, the DOT cross-appeals this ruling.

*A15A2013*

1. Whether Shiv Aban was entitled to prejudgment interest on the $1.27 million payment presents a question of statutory interpretation, which we review de novo. *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 689 (4) (681 SE2d 122) (2009); *Wolfe v. Ga. Dept. of Driver Svcs.*, 330 Ga. App. 552, 553 (768 SE2d 528) (2015).

When interpreting statutes, "the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Nevertheless, when construing a statute, "we must

4

presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). Thus if the language of the statute "is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003) (citation omitted). Where terms of art are not involved, we look to the common and customary usages of the words and their context. *Zaldivar v. Prickett*, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." Id. (citation and punctuation omitted). Finally, eminent domain statutes must be strictly construed in favor of the private land owner. *Threatt v. Forsyth County*, 250 Ga. App. 838, 840 (1) (a) (552 SE2d 123) (2001); see also *Thomas v. City of Cairo*, 206 Ga. 336, 337 (57 SE2d 192) (1950).

The context of Shiv Aban's claim for interest includes the statutes governing the DOT's suit for condemnation. The DOT filed suit under OCGA §§ 32-3-4 through 32-3-20, thereby choosing the "declaration of taking" method of condemnation to

acquire the subject property, which is available when property is sought for public

roads or public transportation.[1] The declaration-of-taking method

> allows the government to take title immediately by filing a petition and
> declaration of taking and paying into the court registry just and adequate
> compensation as determined by its own appraisal. See OCGA §§ 32-3-6
> to 32-3-7. There is no pre-taking notice or opportunity to be heard on the
> compensation issue. See OCGA §§ 32-3-7 (a), 32-3-13 (a). The property
> owner can, however, obtain a de novo determination [of the property's
> value] by a jury after the fact. See OCGA §§ 32-3-14, 32-3-16.

*Windsor*, 287 Ga. at 335, n. 1.[2] Here, because Shiv Aban was dissatisfied with the

amount of compensation the DOT paid into court, Shiv Aban filed a notice of appeal

demanding a trial by jury and sought an interlocutory hearing under OCGA § 32-3-15

on the issue of whether the amount the DOT deposited into court as just and adequate

compensation was sufficient.

---

[1] Two other methods of condemnation exist under Georgia law: the assessor method, see OCGA §§ 22-2-1 to 22-2-86; and the special master method, see OCGA §§ 22-2-100 to 22-2-114. *Windsor v. City of Atlanta*, 287 Ga. 334, 335 n. 1 (695 SE2d 576) (2010).

[2] The declaration of taking method "is the only procedure that allows the taking or damaging of private property before an evidentiary hearing has been held to fix the amount of just and adequate compensation." 1 Daniel F. Hinkel, Pindar's Ga. Real Estate Law & Procedure § 2:33 (7th ed.).

As required by OCGA § 32-3-15, which sets forth the rules for interlocutory hearings, the court then appointed a board of assessors to determine whether the DOT should "be required to deposit any additional amount as estimated compensation" and to "make an interlocutory award based upon such determination." OCGA § 32-3-15 (b). Once the court approved the interlocutory award, the court, as required, directed that the DOT pay the additional amount into court. OCGA § 32-3-15 (c). Thus, the DOT paid $1.27 million into the registry of the court on August 12, 2014, exactly 11 months after the DOT's initial payment of $430,000.[3] Now satisfied with the amount

---

[3] OCGA § 32-3-15 (d) provides that the money in the court registry could have been paid to Shiv Aban at any time after the interlocutory award if Shiv Aban had posted a bond:

> Upon the application of the party or parties in interest at any time before a jury verdict on the appeal, the court shall order that the additional money deposited in court be paid forthwith to the parties found to be entitled thereto; provided, however, that any party or parties receiving any payment of any amount paid into court pursuant to an interlocutory award shall, before receiving such payment, file in the case a bond in the amount of such payment conditioned for the repayment of any amount so received by such party which may be in excess of the amount awarded by the jury upon the trial of the appeal.

OCGA § 32-3-15 (d). As of the hearing held on November 10, 2014, the parties agreed that the money remained in the registry of the court.

7

of the award of just and adequate compensation, Shiv Aban gave notice of intent to dismiss its appeal for a jury trial in the superior court and stated its desire to "accept the award of the Assessors." Finally, the same statute provides that once Shiv Aban notified the court of its intent to dismiss its appeal, the interlocutory award became "the final judgment in the proceeding" and "[it] shall not be vacated or modified." OCGA § 32-3-15 (g).

The DOT and Shiv Aban both then requested a final judgment from the superior court, and, relying on OCGA § 32-3-19 (c), Shiv Aban requested that the judgment include seven percent interest on the $1.27 million payment from the date of the taking to the date the DOT made that payment. That Code section provides in relevant part:

> *After* just and adequate compensation has been ascertained and established *by judgment*, the judgment shall include, as part of the just and adequate compensation awarded, interest from the date of taking to the date of payment pursuant to final judgment at the rate of 7 percent per annum on the amount awarded by final judgment as the value of the property as of the date of taking[.]

OCGA § 32-3-19 (c) (emphasis supplied).[4] On April 23, 2015, the trial court entered a final judgment in the amount determined by the assessors, and it denied Shiv Aban's request for prejudgment interest. The court held that because OCGA §§ 32-3-19 (a) and (b) specifically reference a "verdict of the jury," OCGA § 32-3-19 (c) was applicable only to a judgment following a jury verdict and not to a judgment following an interlocutory award by the assessors. The court also relied on the fact that OCGA § 32-3-15, the Code section dictating the procedure for an interlocutory hearing, does not expressly provide for interest on a judgment rendered on an assessors' award when a condemnee is satisfied with that award and that because it was amended more recently than OCGA § 32-3-19, OCGA § 32-3-15 constitutes the legislature's final say on the matter.

Several aspects of the procedure for a declaration of taking condemnation are relevant to our analysis. First, in the event a condemnee does not appeal the condemnor's original estimate of the just and adequate compensation as paid into

---

[4] Subsection (c) also provides that "interest shall not be allowed on so much [of the judgment] as shall have been paid into the court and was subject to withdrawal by the condemnee without the requirement of posting a bond as required by Code Section 32-3-15." OCGA § 32-3-19 (c). The remainder of subsection (c) contains rules that address under and over payment by the condemnor relative to the final judgment amount.

9

court, the superior court is required, upon payment of costs, to enter judgment in favor of the condemnee for the sum of money deposited and the case shall be "transferred . . . to the closed docket." OCGA § 32-3-13 (b) & (c).[5] This Code section further provides that nothing contained therein "shall be construed as in any way affecting the title acquired by the condemnor by virtue of the declaration of taking[.]"

---

[5] OCGA § 32-3-13 (b) provides as follows:

If no appeal is filed as provided for in Code Section 32-3-14, the condemnor shall, at the next term of the superior court convening not earlier than 30 days subsequent to the date of service, as provided for in Code Sections 32-3-8 and 32-3-9, or at any time thereafter, pay all accrued court costs in the case to the clerk of the superior court in which the same is pending, at which time the judge of the superior court shall enter judgment in favor of the condemnee and against the condemnor for the sum of money deposited by the condemnor with the declaration of taking. If such sum has been withdrawn from the court by the condemnee as provided for in Code Section 32-3-12, the clerk of the superior court shall mark such judgment satisfied; and if the condemnee has not withdrawn such sum the clerk shall immediately apply the same to the payment of the judgment and either transmit the same to the condemnee or cause the condemnee to be notified that he, the clerk, holds the same subject to the demand of the condemnee.

OCGA § 32-3-13 (c) provides as follows:

In any event, the case shall be transferred, under the conditions set out in this Code section, to the closed docket.

10

OCGA § 32-3-13 (d). This rule reiterates an underlying central theme to the declaration-of-taking procedure whereby the government takes title immediately upon payment of the estimated value of the property.

Next, we agree with the trial court that OCGA § 32-3-15, which states the procedure for interlocutory hearings by assessors, does not expressly provide for prejudgment interest. It also does not refer to OCGA § 32-3-19 (c), the interest calculation provision at issue. Instead, OCGA § 32-3-15 (g) provides that in a case such as the present case, where the condemnee is satisfied with the assessors' decision, the assessors' award "shall become the final judgment in the proceeding and shall not be vacated or modified." Nevertheless, OCGA § 32-3-15 does not include the language found in OCGA § 32-3-13 (d) transferring the case to the closed docket nor that nothing provided in that Code section shall affect the title acquired by the condemnor.

Looking next at OCGA § 32-3-19 as a whole, it is clear that subsections (a) and (b) of that Code section both expressly pertain only to jury verdicts: subsection (a)

generally pertains to the effect of a jury verdict on the property at issue[6]; subsection

(b) generally pertains to the entry of a judgment following a jury verdict.[7] And

---

[6] OCGA § 32-3-19 (a) provides as follows:
(a) The verdict of the jury shall have respect to the lands described in the declaration of taking as set forth in Code Section 32-3-6, or such interest therein as may be described in said declaration, or to any separate claim against the property or interest therein as may be ordered and may be molded under the direction of the court so as to do complete justice and avoid confusion of interest. The court shall give such direction as to the disposition of the fund as shall be proper according to the rights of the several respondents.

[7] OCGA § 32-3-19 (b) provides as follows:
(b) After the verdict of the jury, the court shall, in instances where no motion for new trial or notice of appeal is filed within the time provided for by law or where such verdict has been affirmed by a proper appellate court and the remittitur from such court has been made the judgment of the superior court, enter judgment in favor of the condemnee and against the condemnor in the amount of such verdict, together with the accrued court costs, which judgment shall be immediately credited with the sum of money deposited by the condemnor with the declaration of taking and which shall bear interest as provided in subsection (c) of this Code section; and, upon the failure or refusal of the condemnor immediately to deposit such increase in such sum into the registry of the court, as well as the accrued court costs, it shall be the duty of said clerk to issue execution therefor.

subsection (b) is linked directly with subsection (c) in that it provides, as a part of rendering a judgment, that the court "shall" award "interest as provided in subsection (c) of this Code section."[8] OCGA § 32-3-19 (b). Thus, subsection (b) makes plain that prejudgment interest under subsection (c) is to be awarded following jury verdicts, which necessarily includes cases where the condemnee sought an interlocutory order but, being *dissatisfied* with the result, maintained its appeal and sought a jury trial. Even so, subsection (c) states that it applies "[a]fter just and adequate compensation has been ascertained and established *by judgment*." (Emphasis supplied). And OCGA § 32-3-15 provides that such a judgment is to be entered following an interlocutory award accepted by the condemnee. Thus, on its face, OCGA § 32-3-19 (c) pertains to *all judgments* establishing just and adequate compensation, i.e., judgments following interlocutory awards as well as judgments following jury awards. Furthermore, as in OCGA § 32-3-13 but unlike OCGA § 32-3-15, the final subsections of OCGA § 32-3-19 provide that once a final judgment with interest has been entered "the case shall be transferred . . . to the closed docket" and that nothing

---

[8] Subsection (b) also includes a provision allowing the clerk to issue an execution if the condemnor fails to pay prejudgment interest awarded by the court. OCGA § 32-3-19 (b).

13

provided therein shall affect the title acquired by the condemnor. See OCGA § 32-3-19.

Based on a plain reading of all pertinent statutes, which must be construed together,[9] we hold that OCGA § 32-3-19 (c) is applicable in a case such as this where a condemnee accepts an interlocutory ruling by the assessors and the superior court enters a final judgment following a condemnee's dismissal of an appeal for a jury trial under OCGA § 32-3-15. First, OCGA § 32-3-19 (c), unlike subsections (a) and (b), does not expressly limit itself to final judgments following a jury verdict. And OCGA § 32-3-15 is one method available for establishing such a judgment. Second, although OCGA § 32-3-13 and 32-3-19 provide for a case to be transferred to the closed docket, OCGA § 32-3-15 does not. Similarly, although OCGA § 32-3-13 and 32-3-19 include language regarding a judgment's affect on the title acquired by the condemnor by virtue of the declaration of taking, OCGA § 32-3-15 does not. Thus, both OCGA § 32-3-13 and 32-3-19 are the only means provided by the legislature under the declaration-of-taking method of condemnation that provide for transfer of the case to the closed docket. So, even when a condemnee, such as Shiv Aban, elects to accept the assessors' award and a final judgment is accordingly entered under

---

[9] Statutes that are "in pari materia," i.e., those that relate to the same subject matter, must be construed together. *Snyder v. State*, 283 Ga. 211, 214 (3) (657 SE2d 834) (2008).

14

OCGA § 32-3-15, the case is not ready to be sent to the closed docket or for the warning about the effect of any proceedings on the condemnor's title. Rather, OCGA § 32-3-19 (c), (d) and (e) are still applicable to the termination of a case that has reached final judgment under OCGA § 32-3-15.

The trial court and the DOT contend that the fact that the legislature did not include an express provision for prejudgment interest in OCGA § 32-3-15 as amended in 1998 shows that the legislature did not intend for interest to be awarded on interlocutory orders that become final judgments under that Code section. But the fact that the current OCGA § 32-3-15 was modified after OCGA § 32-3-19 was enacted only reinforces the conclusions we reach above. See 1998 Ga. Laws, p. 1539, § 12 (amending Code Section 32-3-15 in its entirety); compare 1973 Ga. Laws, p. 947, § 1 (original enactment of chapter pertaining to declaration-of-taking method of condemnation). It is true that "[w]here there is a conflict between legislative acts, the later in time will control as it is presumed to be the last expression of legislative will." *Patrick v. Head*, 262 Ga. 654, 654 (3) (424 SE2d 615) (1993) (citation omitted). But here, we find no conflict between OCGA § 32-3-15 as amended and OCGA § 32-3-19 once we apply the presumption that the legislature is presumed to act with full knowledge of the existing state of the law:

> [A] statute is presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. It is therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

*Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437, 440 (2) (678 SE2d 877) (2009) (citation omitted). In this case, at the time the current version of that statute was enacted, OCGA § 32-3-19 (c) already stated that interest should be awarded "[a]fter just and adequate compensation has been ascertained and established *by judgment*." (Emphasis supplied). And OCGA § 32-3-15 provides a procedure for establishing such a judgment: an interlocutory hearing is held to determine whether "just and adequate compensation is sufficient"; and, if the condemnee dismisses its appeal of a jury trial, the interlocutory award becomes "the final judgment in the proceeding." Yet, upon amending OCGA § 32-3-15, the legislature did not amend OCGA § 32-3-19 (c) to state that it only applied to judgments on jury verdicts. Further, at the time that OCGA § 32-3-15 was amended, the legislature did not include the provisions found in OCGA § 32-3-13 and 32-3-19 that provide for transferring the case to the "closed docket" nor reiterate that such a judgment has no effect on title to the

16

property, thereby indicating that further proceedings were required, such as OCGA § 32-3-19 (c), (d), and (e). Thus, the amendment to OCGA § 32-3-15 dovetails with the preexisting scheme of the entire declaration-of-taking procedure.

Also, the fact that OCGA § 32-3-15 (g) states that an "interlocutory award . . . shall not be vacated or modified," when read in context with the entire declaration-of-taking condemnation procedure, simply shows that the interlocutory award on "just and adequate compensation" may not be altered. Prejudgment interest, however, is not part of the "just and adequate compensation" determined in a condemnation proceeding but rather, an addition to that sum. *Dept. of Transp. v. Consolidated Equities Corp.*, 181 Ga. App. 672, 677 (353 SE2d 603) (1987) (holding that post-judgment interest cannot be calculated on pre-judgment interest because pre-judgment interest is not part of the just and adequate compensation awarded in a condemnation case). Likewise, the DOT's argument about the quick availability of funds awarded in an interlocutory proceeding under OCGA § 32-3-15 is without merit. The DOT argues that

> [b]ecause the interlocutory funds are quickly and readily available to the Condemnee, the legislature did not make any provision for payment of interest on additional compensation awarded to a Condemnee by a Board of Assessors.

But additional compensation awarded via the interlocutory procedure is available to the condemnee regardless of whether it withdraws its appeal or proceeds with a jury trial. See OCGA § 32-3-15 (d). And, as the DOT concedes, prejudgment interest is available on jury trial awards. Thus the quick availability of funds awarded in an interlocutory proceeding is not relevant to whether interest on that award is available.

The DOT also points to the clause of OCGA § 32-3-19 (c), emphasized below:

> After just and adequate compensation has been ascertained and established by judgment, the judgment shall include . . . interest from the date of taking . . . ; *but interest shall not be allowed on so much thereof as shall have been paid into the court and was subject to withdrawal by the condemnee without the requirement of posting a bond as required by Code Section 32-3-15*.

But again, this provision sheds no light on the fundamental question before us because it is equally applicable to cases where the condemnee accepts the interlocutory award and dismisses the appeal for a jury trial and cases where the condemnee proceeds to a jury trial; nothing in OCGA § 32-3-15 provides that deposited funds are available to only those who dismiss their appeal. Rather, in either case, under the express terms of OCGA § 32-3-19 (c), the trial court must determine whether the condemnee is not entitled to interest because the condemnee had access

18

to the funds "paid into court pursuant to an interlocutory award," OCGA § 32-3-15

(d), without the requirement of posting a bond.[10]

Finally, our interpretation of the relevant statutes is consistent with a traditional

understanding of when interest should be awarded. Under the declaration-of-taking

method of condemnation, once the original payment is made, the taking has occurred.

OCGA § 32-3-7 (a).[11] To the extent the condemnor has underestimated the true value

of the property, the condemnee has been deprived of a portion of the value of its

property starting that day. See *Brooks v. Dept. of Transp.*, 254 Ga. 60, 61 (1) (a) (327

SE2d 175) (1985) (prejudgment interest compensates the condemnee for the use of

---

[10] Here, Shiv Aban is not asking for any interest after the date the DOT deposited the $1.27 million into court, i.e., the earliest date possible that the additional funds became available to Shiv Aban.

[11] OCGA § 32-3-7 (a) provides as follows:
Upon the filing of the declaration of taking and the deposit into court, which deposit shall be made at the time the declaration of taking is filed to the use of the persons entitled thereto, of the sum of money estimated in the declaration by the condemning authority to be just compensation, title to the property in fee simple absolute or such lesser interest as is specified in the declaration shall vest in the condemnor; the land shall be deemed to be condemned and taken for the use of the condemnor; and the right to just compensation for the same shall vest in the persons entitled thereto.

funds generated in a condemnation action). That is the case here. On September 12, 2013, the DOT took Shiv Aban's property and placed only $430,000 into the registry of the court. The proceedings ultimately showed that the DOT should have paid $1.7 million into court that day. Thus, from that day through the day the DOT paid the balance due, Shiv Aban was deprived of $1.27 million of its property, upon which it could have obtained interest in the open market. In short, there is nothing unreasonable about our interpretation of the applicability of OCGA § 32-3-19 (c) to the present case. See generally *Brooks*, 254 Ga. 60 at 61 (1) (b) ("The 7% prejudgment interest rate is simply an incident of any condemnation action and applies to all condemnees equally.").

For the above reasons, we hold that the trial court erred by failing to award prejudgment interest on $1.27 million from the date of the taking through the date that amount was deposited into court. We therefore reverse the judgment in case No. A15A2013 and remand with direction to reenter the judgment with prejudgment interest consistent with this opinion.

*Case No. A15A2014*

2. In the cross appeal, the DOT contends the trial court erred by awarding attorney fees and expenses in favor of Shiv Aban. The trial court found that Shiv

Aban was "entitled to recover under OCGA § 9-15-14 (a) and/or[12] OCGA § 9-15-14 (b)."

Subsection (a) of OCGA § 9-15-14 requires an award of attorney fees when a party asserts "a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position." Subsection (b), among other things, gives discretion to a trial court to award attorney fees when a party brings or defends an action "that lacked substantial justification." See also *Fulton County Bd. of Tax Assessors v. Boyajian*, 271 Ga. 881, 882 (2) (525 SE2d 687) (2000). We will "affirm an award under subsection (a) if there is any evidence to support it, while we review subsection (b) awards for abuse of discretion." *Fox v. City of Cumming*, 298 Ga. App. 134, 135 (679 SE2d 365) (2009) (footnote omitted).

The essential factual findings of the trial court regarding the fee award are that although the DOT made its initial deposit of $430,000 on September 12, 2013, in connection with its declaration of taking based on an appraisal of Shiv Aban's property by John Simshauser, a qualified and licensed real estate appraiser, that

---

[12] The DOT does not challenge the wording of this award of attorney fees.

21

appraisal was fundamentally flawed. Shiv Aban's property, a motel, was extensively damaged by a tornado in April 2011 and the motel ceased doing business, but Shiv Aban eventually spent approximately $857,000 restoring the property and the motel reopened in June 2012, months before the condemnation. Yet Simshauser's appraisal, which allegedly provided a valuation as of May 2012, was in fact based on photographs dated November 2011, all of which showed a tornado-damaged motel. And Simshauser's affidavit of value for the motel, based on the appraisal and filed in support of the declaration of taking, was dated December 4, 2012, ten months before the date of the taking.

Thus, the court concluded, the DOT's basis for its original estimated value of Shiv Aban's property was not adjusted to the date of the taking. Although the DOT presented a different appraisal by a different appraiser (Lamar Pinson) at the interlocutory hearing on the adequacy of the DOT's original estimate showing the value as of the date of the taking to be $1.25 million, the DOT presented "no credible explanation . . . to account for the discrepancy of $820,000.00 between the Condemnor's deposit on the date of taking . . . and that of [the DOT's] only testifying witness [at that hearing], Lamar Pinson." The trial court therefore held,

22

Given the [DOT's] failure to time adjust its estimate of fair, just, and adequate compensation in its initial estimate of damages and to account for [Shiv Aban's] reconstruction of its storm damaged motel for $857,000, [the DOT's] deposit of $430,000 evidences a complete absence of any justiciable issue of law or fact that it could not reasonably be believed that a Court would accept the asserted claim or position.

The court further concluded that Shiv Aban incurred reasonable and necessary attorney fees and expenses of litigation in order "to achieve a recovery of fair, just and adequate compensation." The court therefore awarded fees and expenses to Shiv Aban as stated above.

(a) The DOT first contends the trial court erred as a matter of law because it relied on the DOT's pre-litigation activities to authorize the award of fees. It contends that because none of Simshauser's actions regarding his appraisal of the property occurred during the litigation, the trial court erred by basing its award on those actions. The DOT further contends that under the circumstances, Shiv Aban's avenue for relief regarding Simshauser's appraisal was OCGA § 32-3-11, which provides the trial court with "the authority to set aside, vacate, and annul the declaration of taking, together with any title acquired thereby" in instances of fraud; bad faith; improper use, abuse, or misuse of the power of eminent domain; or certain other reasons not

23

applicable here. OCGA § 32-3-11 (a) & (b). And any such assertion must be brought within 30 days following service of the declaration of taking, which Shiv Aban did not do. OCGA § 32-3-11 (c).

The Supreme Court of Georgia has confirmed that OCGA § 9-15-14 applies to condemnation proceedings. *Dept. of Transp. v. Woods*, 269 Ga. 53, 55 (1) (494 SE2d 507) (1998). But as this Court has held, OCGA § 9-15-14 does not apply to a condemnor's pre-litigation activities. *Cobb County v. Sevani*, 196 Ga. App. 247, 248-249 (395 SE2d 572) (1990) (holding that the focus of OCGA § 9-15-14 is upon actions undertaken during the legal proceedings, "not upon the pre-litigation actions of one who only subsequently becomes a party to a legal proceeding.").

We agree with Shiv Aban and the trial court that Shiv Aban does not complain about the DOT's pre-litigation activities nor about how Simshauser developed his appraisal, which was a pre-litigation activity. Rather, Shiv Aban complains about DOT's use of a legally inapplicable appraisal in its declaration of taking, which shows that it took a position *in the litigation itself* that was not factually or legally supported, i.e., it based its condemnation action on a fundamentally flawed appraisal. The *Sevani* case is distinguishable on the facts. The opinion in *Sevani* makes plain that the condemnee sought fees under OCGA § 9-15-14 "relying entirely upon the

24

manner in which Condemnor had conducted the pre-acquisition appraisal and negotiations." Id. at 247. No further details are provided about the nature of those alleged activities, and, importantly, the opinion does not state or suggest that condemnor filed a legally flawed appraisal in the litigation in support of its estimate of just and adequate consideration. Here, unlike in *Sevani*, the facts show that the DOT filed a fundamentally flawed appraisal in support of the declaration of taking and therefore took a baseless position in the present litigation. Thus Shiv Aban rightly challenges litigation activities by the DOT, not pre-litigation activities barred by *Sevani*.

We further agree with Shiv Aban that it did not waive its claim of fees under OCGA § 9-15-14 by not attacking the taking under OCGA § 32-3-11. By its very terms, OCGA § 32-3-11 (a) and (b) provide that the trial court may "set aside, vacate, [or] annul a declaration of taking, together with any title acquired thereby." But Shiv Aban does not seek to set aside the taking. Compare *Sevani*, 196 Ga. App. at 249 (when condemnee believes condemnor's pre-acquisition activities are abusive, condemnee can move to set aside the taking under OCGA § 32-3-11). Rather, Shiv Aban accepted the legitimacy of the taking and only contested the amount of compensation. Its attack on the DOT's initial estimate of just compensation is not an

25

attempt to set aside the taking but rather to recover fees incurred in response to an initial estimate that was so flawed as to constitute a violation of OCGA § 9-15-14. *Sevani* is distinguishable because, unlike the present case, the condemnee in *Sevani* challenged the condemnor's pre-litigation activities and here, Shiv Aban challenges the condemnor's litigation activities.[13] Accordingly, the trial court correctly concluded that Shiv Aban was authorized to seek fees under OCGA § 9-15-14 and the DOT's first enumeration of error is therefore without merit.

(b) The DOT next contends the trial court erred because Shiv Aban failed to present any evidence of improper conduct, a lack of substantial justification, or an intent to delay or harass on the part of the DOT during the course of the litigation. As stated above, the trial court awarded fees under both OCGA § 9-15-14 (a), which we will affirm if there is any evidence to support the award, and OCGA § 9-15-14 (b), which we review for abuse of discretion.

---

[13] Other cases cited by the DOT are inapposite or distinguishable. In *Dept. of Transp. v. Franco's Pizza & Delicatessen*, 164 Ga. App. 497 (297 SE2d 72) (1982), which is physical precedent only, the condemnee alleged that the condemnor improperly handled preacquisition negotiation with prospective condemnees pursuant to inapplicable federal guidelines. Id. at 498 (Carley, concurring specially). The condemnees did not contend that the condemnor filed a legally insufficient affidavit in support of a declaration of taking. The case of *Kitchens v. Ezell*, 315 Ga. App. 444, 451 (2) (726 SE2d 461) (2012) (physical precedent only), involved bad faith negotiations and actions during pre-litigation attempts to settle a claim.

Shiv Aban presented some evidence to show that the DOT's initial estimate was so flawed that it could not be reasonably believed that the trial court would accept the position. Shiv Aban presented evidence to show that the initial estimate was based on an appraisal conducted in May 2012 that stated the value of the property as of May 20, 2012, approximately 16 months prior to the date of taking; the appraisal was dated December 4, 2012, approximately nine months prior to the taking; it was based on photographs taken of a storm damaged and non-operational motel; and it failed to take into account that Shiv Aban spent approximately $857,000 to repair the hotel and that the hotel was operational months before the date of the taking. Thus, the trial court did not err by finding that Shiv Aban was entitled to fees under OCGA § 9-15-14 (a); compare *Woods*, 269 Ga. at 55 (2) ("[B]ecause DOT's initial deposit was based upon a valid estimate made by a qualified appraiser, it cannot be said that its position was void of any justiciable fact, such that it could not be reasonably believed that a court would accept it.") (citation, punctuation and footnote omitted).

It is true that the DOT's original estimate is only that, an estimate and that the declaration-of-taking procedure allows the DOT to present a different expert at the interlocutory hearing. *Morrison v. Dept. of Transp.*, 166 Ga. App. 144, 145 (303

SE2d 501) (1983) ("DOT was not bound by its original estimate but could present evidence de novo as to fair market value and consequential damages"); *Aiken v. Dept. of Transp.*, 171 Ga. App. 154, 155 (1) (319 SE2d 58) (1984). Even so, a condemnor is not allowed to file court pleadings that violate OCGA § 9-15-14's standards.

Because the trial court's award of fees is affirmed under OCGA § 9-15-14 (a), we need not address whether the trial court abused its discretion by finding that the DOT's action lacked substantial justification under OCGA § 9-15-14 (b).

(c) Finally, the DOT contends the trial court erred as a matter of law in determining the amount of the award. It argues that the trial court impermissibly awarded attorney fees on a lump sum contingent fee basis and that it failed to apportion the fees and expenses between sanctionable acts and those deemed proper.

"[A]n award of attorney fees is to be determined upon evidence of the reasonable value of the professional services which underlie the claim for attorney fees." *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 483 (3) (a) (759 SE2d 804) (2014) (citation and punctuation omitted). In *Couch*, the Supreme Court held that a court may award fees based on a contingent fee agreement, but "[e]vidence of the existence of a contingent fee contract, without more, is not sufficient to support the award of attorney fees." Id. (citation omitted). The party must present "proof of the

28

value" of the services for which fees are sought. Id. Thus, although "[a] court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees," to do so

> "the party must show that the contingency fee percentage was a usual or customary fee for such case and that the contingency fee was a valid indicator of the value of the professional services rendered. In addition, the party seeking fees must also introduce evidence of hours, rates, or some other indication of the value of the professional services actually rendered."

Id. (citation omitted)., quoting *Brock Built, LLC v. Blake*, 316 Ga. App. 710, 714-715 (2) (b) (730 SE2d 180) (2012). In addition, "the trial court must limit the fee[] award to those fees incurred because of the sanctionable conduct." *The Gibson Law Firm v. Miller Built Homes*, 327 Ga. App. 688, 691 (761 SE2d 95) (2014) (punctuation omitted) (failure to apportion award of fees based on the party's sanctionable conduct is error).

Here, the trial court heard evidence regarding the legal experience of the attorneys and other employees of Shiv Aban's counsel, including that lead counsel had 50 years of experience handling condemnation litigation on behalf of condemnors

29

and condemnees; that the firm usually charged a flat rate of 40 percent of any award that exceeded the highest offer obtained by the condemnee from the condemnor; that most condemnees prefer a contingency fee basis and do not want to pay an hourly fee; that in this case, counsel offered a contingency fee on a sliding scale that was less than 40 percent[14] as a result of negotiation with Shiv Aban; that the firm put in 510 to 515 total hours on the entire case through the day of the fee hearing; that the hourly rates of the attorneys and other professionals ranged from $350 to $165 per hour; that the rates were reasonable for the North Georgia area based on the experience and services provided; that if the firm had billed Shiv Aban based on those rates, the bill for attorney fees would have been approximately $124,000; that the firm incurred $24,016.19 in litigation expenses associated with all their work; that Shiv Aban only sought fees against the DOT based on the difference between the highest offer that it received from the DOT and the DOT's $1.25 million appraisal; that under the contingent fee agreement, the amount of fees sought against the DOT was approximately $236,000 plus the total amount of litigation expenses; that Shiv Aban

---

[14] Shiv Aban had a contingent fee contract that provided a sliding scale contingency of 40 percent of the first $250,000 recovered in excess of the DOT's' highest pre-taking offer of $503,684; 30 percent of the amount recovered in excess of $753,684; and 25 percent of the amount recovered in excess of $1,003,684.

paid fees to its attorneys above and beyond $236,000 in accordance with the contingency fee agreement; and that the firm risked having to try the case twice if the DOT had appealed the assessors' award.

In its order granting the motion for fees and expenses, the trial court held that Shiv Aban had

> self-limited its claim for attorney[ ] fees, and has not claimed attorney[ ] fees and expenses of litigation based on its full recovery of $1,700,000.00 . . . . Instead [Shiv Aban] asserts a claim for contingent attorney[ ] fees only on sums in excess of $503,684 and less than $1,250,000.

The court further found that Shiv Aban had negotiated a fee contract with its counsel at a rate less than counsel's standard, 40 percent flat rate; that counsel's hourly rates were reasonable; and that Shiv Aban's counsel expended over 510 hours, "which amounts to more than $123,500" at those rates. The court concluded as follows:

> Considering all factors, the Court finds that a risk premium of two times the hourly rate to be a reasonable parameter for this condemnation case. As such, the Court finds . . . that the actual contingent fee claimed of $236,879 (31 %) is reasonable.

With one exception, we hold that the DOT's assertions of error with regard to the trial court's award are without merit.

First, as shown above, the trial court was authorized to make an award based on a contingent fee agreement. Following *Couch*, the court received evidence regarding the reasonableness of the fees, including that the contingent fee percentage negotiated by Shiv Aban was less than that normally charged by Shiv Aban's attorneys for similar work. The court also held that the normal hourly rates that the attorneys for Shiv Aban charged were reasonable based on the experience of each person involved. The court then compared the limited contingency fee sought by Shiv Aban to the fee that would have been incurred under hourly billing, and held that the limited contingency fee was reasonable given the risks involved in taking a contingency fee case. Thus the court evaluated the value of the services for which contingency fees were sought based on information other than the contingency fee agreement itself and therefore properly followed *Couch* in determining the amount of the fee award. The DOT's reliance on *Gibson* is misplaced. That case only found fault with how a trial court failed to show that it apportioned its award to distinguish fees incurred based on sanctionable conduct from fees incurred for other aspects of the case; it did not prohibit fee awards based on contingent fee agreements. *Gibson*, 327 Ga. App. at 691 (3).

Second, the trial court apportioned the fees incurred between those associated with the DOT's improper conduct and those that were not. See *Fedina v. Larichev*, 322 Ga. App. 76, 81 (5) (744 SE2d 72, 77 (2013) ("in cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct.") (citation, punctuation and footnote omitted). Here, as requested by Shiv Aban, the trial court limited its calculation of attorney fees to those associated with the difference between the DOT's highest pretrial offer and $1.25 million, the value of the property found by the DOT's testifying appraiser. Thus, the trial court did not simply award an unapportioned "lump sum" as the DOT suggests and in fact apportioned the award as required by the above case law. Compare *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009) ("trial court failed to apportion fees between those incurred in defending against the claims deemed frivolous and any that were not"). In sum, we find no error in the trial court's calculation of the fee award.

With regard to litigation expenses, however, we find no evidence of any apportionment. Unlike the attorney fee award, Shiv Aban was awarded all of the litigation expenses incurred by its attorneys. Because the trial court failed to make any apportionment whatsoever regarding those expenses, we vacate that portion of

33

the award and remand with direction to apportion those expenses and to award only those associated with the DOT's sanctionable conduct.

*Judgment reversed in Case No. A15A2013 and case remanded with direction. Judgment vacated in part in Case No. A15A2014, and case remanded with direction. Andrews, P. J., and Miller, P. J., concur.*